THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TIFFANY HILL,

                Plaintiff,

      v.

XEROX CORPORATION,

                Defendant.

CASE NO. C12-0717-JCC

ORDER

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (Dkt. No. 59), Defendants' Motion Requesting Permission to File Surreply (Dkt. No. 86), the parties' motions to strike, and Plaintiff's Motion for Class Certification (Dkt. No. 39). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for partial summary judgment (Dkt. No. 59), DENIES the motion to file surreply (Dkt. No. 86), GRANTS IN PART the motions to strike, and GRANTS IN PART the motion for class certification (Dkt. No. 39) for the reasons explained herein.

I.      BACKGROUND

Defendants operate call centers, also referred to as strategic business units ("SBUs"). (Dkt. No. 56 at 5.) At these call centers, agents respond to calls for third-party clients such as phone companies, airlines, and hotels. (Dkt. No. 39 at 9–10.) This case concerns five call centers

1  in Washington: one in Federal Way, one in Lacey, one in Spokane, and two in Kent. (*Id.* at 9.)

2  The Lacey and Federal Way call centers are operated by Livebridge, Inc., and the Kent and

3  Spokane centers are operated by Xerox Commercial Solutions, LLC ("XCS"). (Dkt. No. 56 at 5.)

4      Plaintiff seeks to certify two classes implicating two different call-center practices. The

5  first class relates to Defendants' use of a compensation system known as the Achievement Based

6  Compensation ("ABC") plan. The second relates to Defendants' alleged failure to pay agents for

7  off-the-clock work. (Dkt. No. 39 at 8.)

8      Under an ABC plan, an agent's compensation derives from several sources. Specifics of

9  particular plans vary, but the general premise is as follows. Agents record the time they spend on

10  different activities. Some activities—such as trainings and meetings—are compensated on an

11  hourly basis. (Dkt. No. 39 at 15; Dkt. No. 56 at 7–8.) Compensation for these activities is called

12  "Additional Pay" and neither party suggests that this case implicates the compensation rate for

13  these activities. (Dkt. No. 39 at 15; Dkt. No. 56 at 7–8.)

14      Another source of compensation for agents is "ABC Pay." (Dkt. No. 56 at 7–8.) To

15  receive this piece of their compensation, agents track all time spent in certain activities, such as

16  receiving calls or performing follow-up work. Some of these activities—such as receiving

17  inbound calls—are paid on a per-minute basis, and each minute is referred to as a "production

18  minute." (Dkt. No. 56 at 8.) Agents also record their time for "non-productive" activities, which

19  can include activities like waiting for a call. (Dkt. No. 57, Ex. A-2 ¶ 11.) These non-productive

20  activities are not compensated on a per-minute basis. Instead, an employee's compensation based

21  on production minutes is totaled for the week. (Dkt. No. 39 at 16.) The employee's number of

22  hours during a workweek on all activities—those that are compensated on a per-minute basis and

23  those that are not—are then added together. (*Id.*) The hourly rate is calculated by dividing the

24  employee's compensation for per-minute activities by the total number of hours worked on all

25  activities. (*Id.*) If that hourly rate is less than the minimum wage, employees receive "subsidy

26  pay" to ensure that the hourly rate on a per-week basis meets the minimum wage. (Dkt. No. Ex.

1  31 at 3; Dkt. No. 56 at 8.) Plaintiff alleges that this system of compensation violates

2  Washington's minimum-wage laws.

3          This case also concerns Defendants' alleged practice of failing to pay employees for all

4  work required as part of their duties. Plaintiff alleges that agents perform two types of work that

5  are not compensated. First, Plaintiff alleges that employees must be prepared to answer calls at

6  the beginning of their shift times, but that they are not compensated for the pre-shift time it takes

7  to login and start the computer programs necessary to be prepared to answer calls. (Dkt. No. 39

8  at 19–22.) Second, Plaintiff argues that Defendants fail to pay employees for post-call, follow-up

9  work, such as processing customer requests and inputting information. (*Id.* at 22–25.) Plaintiff

10 alleges that Xerox limits the amount of time employees may spend in "after-call" status and that

11 agents must perform follow-up time on an uncompensated basis to complete this work. (*Id.*)

12 **II.      DISCUSSION**

13         **A.       Motion for Partial Summary Judgment**

14         Defendants seek summary judgment on three related issues:

15         (1) Whether the Federal Way compensation system complies with the minimum-wage
16             requirements of Wash. Rev. Code § 49.46.020;

17         (2) Whether the Federal Way compensation system complies with the overtime
               requirements of Wash. Rev. Code § 49.46.130; and
18

19         (3) Whether Plaintiff was properly paid for her recorded hours in compliance with the
               minimum-wage and overtime requirements.

20 (Dkt. No. 59 at 3–4.)

21                 1.   *Standard on Summary Judgment*

22         "The court shall grant summary judgment if the movant shows that there is no genuine

23 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

24 Civ. P. 56(a). Material facts are those that may affect the case's outcome. *See Anderson v.*

25 *Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there

26 is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at

ORDER
PAGE - 3

1   49. At the summary judgment stage, evidence must be viewed in the light most favorable to the

2   nonmoving party, and all justifiable inferences must be drawn in the nonmovant's favor. *See*

3   *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

4                              2.   *Minimum-wage Requirements*

5           Washington's Minimum Wage Act requires that employers pay wages at established

6   minimum rates. *See* Wash. Rev. Code § 49.46.020. For workers who are paid hourly, the hourly

7   rate must meet or exceed the minimum wage, a fact that Defendants recognize. (Dkt. No. 59 at

8   17–18.) *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 912 (9th Cir. 2003) (citing Washington cases and

9   discussing reasons for concluding that Washington courts were likely to adopt a per-hour

10  standard for hourly employees). For workers who are paid on a commission or piecework basis,

11  the right accrues across the workweek, a fact which Plaintiff never contests. (Dkt. No. 94 at 19.)

12  *See* Wash. Admin. Code § 296-126-021. In other words, the issue on summary judgment—

13  although neither party straightforwardly puts it this way—is whether the Federal Way workers

14  are hourly employees (as Plaintiff contends) or pieceworkers (as Defendants contend), and thus

15  whether the right to a minimum wage accrues on an hourly or weekly basis.

16          The parties disagree about how to characterize the ABC plan at Federal Way, but they

17  agree that it includes the three types of pay described in the background section: additional pay,

18  ABC pay, and subsidy pay. (Dkt. No. 59 at 6–8; Dkt. No. 94 at 10.) They also agree that Federal

19  Way uses "production minutes" as the relevant unit of production. (Dkt. No. 59 at 4; Dkt. No. 94

20  at 8.) Federal Way previously used calls as a production unit. (Dkt. No. 62 ¶ 5.) Around 2009,

21  the plans changed to use production minutes instead of calls. (*Id.*) This change was in part

22  because the contract with Verizon—the sole Federal Way client—was based on production

23  minutes, and in part because agents were concerned about the unfairness of paying the same

24  amount for a call regardless of whether it lasted one minute or thirty minutes. (*Id.*)

25          In the absence of any state decision considering such an issue, the Court concludes that

26  the Federal Way employees are hourly workers, because "production minutes" are simply

calculations of units of time. Piecework employees are "paid a fixed amount per unit of work" *see* Wash. DLI Admin. Policy ES.A.8.2 at 2 (piecework employees are "paid a fixed amount per unit of work"), but agents being paid for "production minutes" are being paid based on precise units of time. In Defendants' words: "a production minute . . . is effectively (with certain limits) the number of seconds spent on calls, on hold, and on after call work." (Dkt. No. 59 at 4.)

The Court is sympathetic to Defendants' policy arguments and the reasons why the system was established in this manner. The Court is also sympathetic to the general proposition that the division between hourly workers and pieceworkers may fail to reflect the contours of the modern working world. (Dkt. No. 59 at 13 n.9.) But were this Court to accept Defendants' description, every employer could pay hourly workers a "per-minute" rate and thereby avoid the Washington law governing workers paid on a per-hour rate. Defendants functionally suggest as much in arguing that the weekly analysis must be used "whenever an employee is paid 'on other than an hourly basis.'" (Dkt. No. 59 at 16.) By this reasoning, an employer could even label each hour a "unit of work" and readily turn hourly pay into piecework pay. Yet just as a worker paid an hourly rate is paid a certain amount for the precise amount of time worked, a worker paid by the "production minute" is paid a certain amount for the precise amount of time worked.[1]

Defendants cite no case in which workers being paid based on precise calculations of units of time are considered pieceworkers, nor has this Court found any. Instead, Defendants point to a Washington state case in which drivers would earn pre-established amounts of time for completing certain duties, regardless of how long the actual duties took. (Dkt. No. 59 at 13–14 (citing *Cf. General Teamsters Local 174 ex rel Gasca v. Safeway, Inc.*, No. 63006-7-I, 156 Wn.

---

[1] In other contexts, courts have contrasted systems based on units of time from systems based on units of work. *See, e.g., Washington v. Miller*, 721 F.2d 797 (11th Cir. 1983) (citing the Farm Labor Contractor Registration Act, which describes two types of workers, those employed on a time basis, who must record units of time, and those employed on a piece-rate basis, who must record the number of units of work performed); *W.W. Cross & Co. v. N.L.R.B.*, 174 F.2d 875 (1st Cir. 1949) (discussing the definition of wages and describing forms of renumeration in terms of "per unit of time worked or per unit of work produced").

1   App. 1003, slip op. at *4 (Wash. Ct. App. May 17, 2010).) A system equating certain tasks to

2   pre-established units of time is very different than one that measures the precise amount of time a

3   task takes. The former may resemble a piecerate system, but the latter more closely resembles an

4   hourly system.

5        The Court therefore DENIES summary judgment on this claim. This reasoning and the

6   Court's conclusion that this system is not a piecerate system also renders summary judgment

7   appropriate on Defendants' related claims concerning overtime requirements, recorded hours,

8   and the derivative claims. (Dkt. No. 59 at 21, 22, 24.) Summary judgment is therefore DENIED

9   on these as well.

10        **B.**       **Defendants' Motion to Strike and Request for Permission to File Surreply**

11        Defendants move to strike significant portions of the declarations attached to Plaintiff's

12   motion for class certification. (Dkt. No. 56 at 17–18.) Defendants also move to strike large

13   portions of Plaintiff's Reply. (Dkt. No. 83 at 2.) Plaintiff in turn moves to strike a declaration

14   from Defendants' attorney listing record citations for "facts of relevance in this case," which

15   Plaintiff claims is argumentative. (Dkt. No. 76 at 19–20.) Plaintiff also moves to strike a number

16   of references to various records related to key cards and security badges. (Dkt. No. 76 at 20.)

17        A motion to strike is proper when a pleading contains "any redundant, immaterial,

18   impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). Applying this standard, the Court

19   STRIKES the assertions in the Reply stating that Defendants and their attorneys coerced

20   employees to sign the declarations. The declarations do not support these claims, and Plaintiff's

21   inflammatory characterizations are inappropriate under Rule 12(f).

22        Defendants move to strike allegedly conclusory assertions in four agent declarations

23   submitted with the Reply. (Dkt. No. 83 at 3.) In these declarations, four callcenter workers

24   describe how "polic[ies] or practice[s]" caused them to sign in early. Defendants claim that these

25   allegations are not supported by personal knowledge. In support of the motion to strike,

26   Defendants cite two cases. In *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304 (9th Cir.

ORDER
PAGE - 6

1   1977), the district court denied certification when the complaint mimicked the language of Rule

2   23, the only supporting affidavits were from trial counsel, and counsel admitted that the party

3   could not support any facts with personal knowledge. *Doninger*, 564 F.2d at 1309. In *Brown v.*

4   *Citicorp Credit Services, Inc.*, 2013 WL 4648546 (D. Idaho 2013), the court disregarded

5   affidavits from North Carolina employees who purported to testify to the policies in an Idaho call

6   center without any personal knowledge. Neither of these cases supports Defendants' argument

7   that employees cannot describe what they understood the policies to be at the call centers at

8   which they worked. (Dkt. No. 83 at 3.) The Court DENIES the motion to strike. The Court does

9   conclude, however, that there is no suggestion that the employees had knowledge of any policy

10  or practice beyond the call centers at which they worked and interprets the affidavits

11  accordingly. The Court also notes that, as described below, it gives some declarations less weight

12  because of the detail—or lack thereof—contained within.

13      The Court DENIES Plaintiff's motion to strike the declaration from Defendants' attorney.

14  (Dkt. No. 76 at 19–20.)) The summary is not as argumentative as the example in the case on

15  which Plaintiff relies, and the Court concludes that it is appropriately described as a "summary."

16      Defendants move to strike a range of additional statements. The Court recognizes that

17  Plaintiff makes numerous questionable semantic leaps. Questionable semantic leaps, however,

18  are not a basis for a motion to strike. Defendants' arguments for striking material are about the

19  nature of the evidence and the accuracy of Plaintiff's language in describing that evidence. The

20  Court declines to engage in the laborious exercise of making meta-characterizations about the

21  nature of each of these semantic choices before even reaching the merits of the arguments.

22  Moreover, the Court notes that Defendants' submissions are by no means models of semantic

23  clarity or forthrightness,[2] and that both parties are guilty of relying on conclusory statements.

24  The Court DENIES Defendants' requests to strike, as well as Plaintiff's request to strike certain

25  ───────────────────

26      [2] The Court also notes that the declarations from Defendants include some from
    individuals with no apparent relation to this lawsuit.

ORDER
PAGE - 7

1  statements as conclusory.

2  Defendants request permission to file a surreply addressing a number of issues:

3  subclasses, certification of a CPA class, arguments related to the ABC plan being void,

4  arguments claiming that ABC plans are not piece-rate plans, and arguments that there are no

5  liability issues regarding compensation. (Dkt. No. 99.) The Court DENIES the motion to file a

6  surreply. There has already been a round of summary-judgment briefing in this case addressing

7  the primary issue upon which Defendants request permission to discuss. Other issues are

8  rendered moot by this Court's conclusions below. Moreover, the "new" subjects raised in the

9  Reply are largely responses to Defendants' arguments. Plaintiff was not required to anticipate

10 Defendants' arguments, and the failure to do so does not justify another round of lengthy

11 briefing.

12 The Court notes that both parties expended considerable effort parsing statements to

13 strike in the other party's declarations. In turn, this Court spent considerable time engaged in

14 line-by-line analysis of tangential issues attempting to identify the few genuine complaints from

15 both parties. Neither party is blameless. The energy expended by all parties involved would

16 undoubtedly have been more productive had it been directed to clarifying the substantive

17 discussion.

18 **C.     Motion for Class Certification**

19 Under Rule 23, a plaintiff must demonstrate that she has met each of the requirements of

20 Rule 23(a) and at least one of the requirements of Rule 23(b). *Lozano v. AT&T Wireless Servs.,*

21 *Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Rule 23(a) requires: "(1) the class is so numerous that

22 joinder of all members is impracticable, (2) there are questions of law or fact common to the

23 class, (3) the claims or defenses of the representative parties are typical of the claims or defenses

24 of the class, and (4) the representative parties will fairly and adequately protect the interests of

25 the class." Fed. R. Civ. P. 23(a). Plaintiff seeks to satisfy only the requirements of Rule 23(b)(3),

26 which requires that the common questions of law and fact predominate over those questions

1  affecting individual members, and that a class action be a superior method for "fairly and

2  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). (Dkt. No. 39 at 31.)

3       Plaintiff's motion for class certification proposed two classes:

4       (1) The ABC Class – All current and former Customer Care Assistants, Customer
        Service Representatives, or Agents who have worked at Defendants' Washington
5       call centers under an "Activity Based Compensation" or "ABC" plan that paid
        "per-minute" rates for certain work activities between June 5, 2010 and the date
6       of final disposition of this action.

7
        (2) The Off-the-Clock Class – All current and former Customer Care Assistants,
8       Customer Service Representatives, or Agents who have worked at Defendants'
        Federal Way, Lacey, Spokane, and Kent call centers between June 5, 2010 and
9       the date of final disposition of this action.

10 (Dkt. No. 39 at 8.)

11      *1.  The ABC Class*

12      There is no argument that the proposed ABC class meets the requirements of numerosity,

13 commonality, and adequacy. (Dkt. No. 56 at 19–21 (arguing only typicality).) The Court agrees

14 with the parties that the legality of the ABC pay system in Washington presents a legal issue

15 capable of classwide resolution. (Dkt. No. 39 at 25.) The ABC class consists of approximately

16 10,000 current and former call-center workers (Dkt. No. 39 at 26–27), and there is no dispute

17 that the interests of the class will be adequately protected.

18      There is, however, disagreement about whether Ms. Hill's claims and defenses are typical

19 of those of the class. "Under [Rule 23's] permissive standards, representative claims are 'typical'

20 if they are reasonably co-extensive with those of absent class members; they need not be

21 substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The

22 parties agree that at least some agents who started after September 27, 2012, and signed

23 arbitration agreements will be prevented from participating in this class action (Dkt. No. 56 at

24 21; Dkt. No. 76 at 14 n.11), but there is no suggestion that this is a significant enough number of

25 agents to preclude certification on the basis that Ms. Hill is atypical. *Cf. Spann v. AOL Time*

26 *Warner, Inc.*, 219 F.R.D. 307 (S.D.N.Y. 2003) (plaintiffs were not typical of a class consisting of

1   "numerous members" who had signed various releases). Nor does this Court believe that the

2   other concerns Defendants raise—such as Ms. Hill's length of tenure or whether she "saw an

3   ABC plan"—suggest that she is atypical in a manner that should preclude certification.

4        Defendants also argue that common issues do not predominate over individual issues. *See*

5   Fed. R. Civ. P. 23(b)(3). Their argument on this issue largely mirrors the arguments they make

6   for summary judgment. (Dkt. No. 56 at 23–25.) This Court has already concluded that a

7   "production minute" is an exact measurement of a unit of time and that agents are therefore

8   better viewed as hourly workers. Accordingly, the Court finds unconvincing Defendants'

9   argument that agents' interpretations of the ABC plans creates individualized issues. The parties'

10  contractual interpretations are only relevant if one initially assumes that the contract complies

11  with the law. *See* Wash. DLI Admin. Policy ES.A.5 ("An employer must pay minimum wage,

12  regardless of any employee agreement to work for less."). Having concluded that agents are

13  hourly workers, any contract for that hourly wage to be determined on a weekly basis would fail

14  to comply with minimum-wage laws.

15       The parties agree that the settlement in *Sump v. ACS* bars some claims. Plaintiff argues

16  that no *Sump* class member released any claims after June 4, 2010, so there is therefore no

17  overlap with her proposed class, while Defendants appear to argue that claims were not released

18  until September 2010. (Dkt. No. 76 at 14; Dkt. No. 56 at 21.) The parties are directed to file the

19  settlement agreement under seal and either (1) jointly file a stipulation defining a class that

20  accounts for the *Sump* settlement; or (2) in the absence of any agreement, each file a brief not to

21  exceed three pages explaining how the proposed class should account for the *Sump* settlement.

22  This should be completed by August 1, 2014.

23       Plaintiff also seeks certification for CPA claims based on the language in the ABC plans

24  being allegedly unfair and deceptive. (Dkt. No. 76 at 10.) They do not explain how these claims

25  would be litigated on a classwide basis and include minimal discussion of these claims. In the

26  reply brief, Plaintiff for the first time relies on *Kirkpatrick v. Ironwood Comm., Inc.*, No. 05-

1  1428-JLR, 2006 WL 2381797 (W.D. Wash. 2006), but that case dealt with public solicitations.

2  *See id.* at *12. In these circumstances, Plaintiff has not met her burden of demonstrating that the

3  Rule 23 requirements are met. *See Doninger v. Pacific N.W. Bell, Inc.*, 564 F.2d 1304, 1308 (9th

4  Cir. 1977) (party seeking to have a class certified bears the burden of demonstrating that

5  statutory elements are satisfied). The Court DENIES certification of the CPA claims.

6      *2.   The Off-the-Clock Class*

7          There are two aspects to Plaintiff's off-the-clock claims: first, that Defendants failed to

8  pay agents for pre-shift work; second, that Defendants failed to pay for "follow-up" work that

9  employees had to perform during breaks and before or after shirts. (Dkt. No. 39 at 19, 22.) The

10  Court addresses them in turn. The Court focuses here on the commonality requirement of Rule

11  23(a)(2) and the predominance and superiority requirements of Rule 23(b)(3), because the Court

12  concludes that these are fatal to Plaintiff's claims, rendering consideration of other factors

13  unnecessary.

14          As to the pre-shift off-the-clock claims, the Court concludes that there are common

15  questions and that a classwide proceeding would "generate common answers apt to drive the

16  resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing

17  Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009)).

18  Defendants characterize the issue as one of whether each agent had "sufficient" time to log in

19  and state that this is necessarily an individual analysis that requires answering "how much time

20  was needed, for what, was it employer directed or personal preference, did it vary, and did SBU

21  management permit it." (Dkt. No. 56 at 20.) This characterization, however, needlessly

22  complicates and obscures Plaintiff's central contention that employees were expected to be ready

23  to answer calls at the beginning of their shift, and that being prepared to answer calls required

24  logging into certain programs that took time for which employees were not compensated. The

25  Court concludes that answering this central contention would drive the resolution of the

26  litigation.

ORDER
PAGE - 11

1    Turning to the predominance and superiority questions of Rule 23(b)(3), the Court

2  concludes that Plaintiff has failed to establish that the common questions predominate over the

3  individual ones. The Court agrees with Defendants that this case is very similar to *Ginsburg v.*

4  *Comcast Cable Communications Management LLC*, 2013 WL 1661483 at *5 (W.D. Wash. Apr.

5  17, 2013). In *Ginsburg*, the court considered similar off-the-clock claims from call-center agents.

6  Concluding that the common claims did not predominate, the court recognized that the evidence

7  "reveal[ed] a variety of means by which supervisors imposed [a common efficiency] pressure . . .

8  and a variety of ways in which [agents] responded to that pressure." *Ginsburg*, 2013 WL

9  1661483 at *5. The court also recognized that when the workday began—and how to determine

10  when each class member's daily work began—varied across individuals. Further, the plaintiffs in

11  that case had "propose[d] no manageable way to calculate damages." *Id.* at *7.

12    Similarly, here, any common efficiency pressure was implemented by different managers

13  and supervisors. The declarations provided by Plaintiff contain varying descriptions of how long

14  it took to log into programs and how long they spent after logging out. The declarations contain

15  differing descriptions of the policies, with some describing individual supervisors who required

16  them to arrive early—although no declaration identifies any instruction to work off-the-clock—

17  and others referring only to generic policies and practices, without describing the source of the

18  individual's belief about the existence of the policy. In considering whether these declarations

19  demonstrate that common issues predominate, the Court gives little weight to assertions from

20  employees who give no explanation for why they believed particular policies existed without any

21  description of the source or enforcement of these policies. Plaintiff also never attempts to address

22  disparities among the different tracking systems at the call centers and differences in how long,

23  for example, it would take to log in.

24    These individual issues exist even before considering the declarations from Defendants.

25  *See Ginsburg*, 2013 WL 1661483 at * 6 (recognizing reasons to be skeptical of any employee

26  declarations, but concluding that the anecdotal evidence, including declarations from the

ORDER
PAGE - 12

1  defendants, suggested that individual questions could not be addressed with common proof). The

2  agent declarations provided by Defendants only reinforce the existence of individual issues about

3  what employees were told, what options were available for recording their time, and the

4  uncertain source or existence of the alleged policies concerning working off the clock.

5          Also like in *Ginsburg,* Plaintiff has failed to demonstrate any methodology for

6  determining damages and have "propose[d] no manageable way to calculate damages."

7  *Ginsburg*, 2013 WL 1661483 at *7. Plaintiff cites cases approving class-wide aggregate damage

8  formulas, but does not address the widely varying factors influencing how much time, if any,

9  agents spent performing off-the-clock work. Based on the conflicting anecdotal evidence,

10  significant individualized issues concerning damages would undermine the use of an aggregate

11  damage formula. *Cf. Alvarez*, 339 F.3d at 901 (district court relied on representative evidence

12  when there were only "somewhat discrepant job-specific donning and doffing rates"); *Reich v. S.*

13  *New England Telecomms., Corp.*, 121 F.3d 58 (2d Cir. 1997) (representative evidence sufficed

14  when there was "actual consistency among [the] workers' testimony").

15  **III.     CONCLUSION**

16          For the foregoing reasons, Defendants' motion for summary judgment is DENIED,

17  Defendants' motions to strike are GRANTED IN PART, Plaintiff's motions to strike are

18  DENIED, Defendants' motion to file surreply is DENIED, and Plaintiff's motion for class

19  certification is GRANTED IN PART. The parties shall file the *Sump* settlement agreement under

20  seal and (1) either file a stipulation defining a class that accounts for the *Sump* settlement; or (2)

21  each file a brief not to exceed three pages explaining how the proposed class should account for

22  the *Sump* settlement. This should be completed by August 1, 2014.

23  //

24  //

25  //

26

ORDER
PAGE - 13

1   DATED this 10th day of July 2014.

2

3

4

5

6

7         John C. Coughenour
8         UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 14