HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIFFANY HILL, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>XEROX BUSINESS SERVICES, LLC, a Delaware limited liability company, LIVEBRIDGE, INC., an Oregon corporation, AFFILIATED COMPUTER SERVICES, INC., a Delaware corporation, AFFILIATED COMPUTER SERVICES, LLC, a Delaware limited liability company,<br><br>                              Defendants. | No.: 2:12-cv-00717-JCC<br><br>DEFENDANTS' MOTION TO DECERTIFY ABC CLASS<br><br>Noted for Consideration:<br>May 15, 2020 |

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS .....................................................................................2

    A.   Class Members Worked at Different Call Centers, Served Different Clients, Worked Under Different ABC Plans, and Earned Different Types of Pay .......2

        1.   Hourly Pay .....................................................................................2

        2.   ABC Plan Pay.................................................................................2

        3.   Other Incentive Pay .......................................................................4

        4.   Overtime Pay..................................................................................4

    B.   XBS Tracked Total Hours Worked Each Day, but Did Not Track Time Spent Generating What It Considered Units of Production ........................................4

    C.   XBS Paid Employees for Productive and Nonproductive Time Pursuant to Agreement Under the ABC Plans ...................................................................5

    D.   Procedural History ........................................................................................6

III.  ARGUMENT ........................................................................................................6

    A.   This Court Has an Independent Obligation to Ensure the Class Continues to Satisfy Rule 23 Requirements.........................................................................6

    B.   This Court Should Decertify the ABC Class Because the Class Cannot Meet Its Burden to Demonstrate It Can Prove Liability and Damages on a Class Basis .............................................................................................................7

        1.   As This Court, the Ninth Circuit, and the WSC Have Held, MWA Compliance Can Be Determined on an Hourly or Workweek Basis ....8

        2.   Plaintiff Argued that MWA Compliance for the Class Is Determined "Per Hour"..................................................................................9

        3.   Plaintiff Never Addressed How to Prove Liability or Damages on a Per Hour Basis.................................................................................9

        4.   Proof of MWA Liability Depends on an Individualized Assessment of How and How Much Class Members Were Paid...............................10

        5.   The Class Does Not Even Attempt to Demonstrate a Method to Prove Liability on a Class Basis................................................................14

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - i
NO.: 2:12-CV-00717-JCC

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

6. The Class Fails to Demonstrate Any Ability to Prove Damages on a Class Basis .......................................................................................16

C. The Class's Proposed Method of Proving Damages Deprives XBS of Certain Valid Defenses Such as the Right to Offset All Payments Made to the Class 22

IV. CONCLUSION ........................................................................................23

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - ii
NO.: 2:12-CV-00717-JCC

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Alvarez v. IBP, Inc.*,
   **339 F.3d 894 (9th Cir. 2003)** ................................................................**9, 12**

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ..................................................................... 6

*Blough v. Shea Homes, Inc.*,
   2014 WL 3694231 (W.D.Wash. 2014) ..........................................................21

*Brady v. AutoZone Stores, Inc.*,
   2018 WL 3526724 (W.D.Wash. 2018) .....................................................21, 23

*Britton v. Servicelink Field Servs., LLC*,
   2019 WL 3400683 (E.D.Wash. 2019) ..........................................................21

*Byrne v. Courtesy Ford, Inc.*,
   32 P.3d 307 (Wash. Ct. App. 2001) .............................................................11

*Campbell v. City of Los Angeles*,
   903 F.3d 1090 (9th Cir. 2018) ..................................................................... 8

*Champagne v. Thurston Cty.*,
   178 P.3d 936 (Wash. 2008) ........................................................................16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ............................................................................*passim*

*David v. Bankers Life and Cas. Co.*,
   2015 WL 3994975 (W.D.Wash. 2015) .....................................................12, 23

*Douglas v. Xerox Bus. Servs.*,
   2015 WL 10791972 (W.D.Wash. 2015) (JCC) .........................................5, 6, 13

*Espenscheid v. DirectSat USA, LLC*,
   2011 WL 2009967 (W.D.WI 2011), *aff'd*, 705 F. 3d 770 (7th Cir. 2013) ............. 8

*Hill v. Xerox Business Servs.*,
   426 P.3d 703 (Wash. 2018) ...............................................................*passim*

*Hill v. Xerox Business Servs.*,
   868 F.3d 758 (9th Cir. 2017) ............................................................*passim*

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Inniss v. Tandy Corp.*,
  7 P.3d 807 (Wash. 2000) ........................................................................................ 11, 21

*Marlo v. United Parcel Serv.*,
  251 F.R.D. 476 (C.D.Cal. 2008), *aff'd*, 639 F.3d 942 ......................................... 8

*Marlo v. United Parcel Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011).......................................................................... 7, 8, 14

*McConnell v. Mothers Work, Inc.*,
  128 P.3d 128 (Wash. Ct. App. 2006)............................................................... 16

*Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................ 6

*Ordonez v. Radio Shack, Inc.*,
  2014 WL 4180958 (C.D.Cal. 2014) ................................................................ 15

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar System, Inc.*,
  622 F.3d 1307 (11th Cir. 2010) ........................................................................ 7

*Pierce v. Cty. of Orange*,
  526 F.3d 1190 (9th Cir. 2008) .......................................................................... 7

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)............................................................................ 7

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018).......................................................................... 14

*Sampson v. Knight Transp., Inc.*,
  448 P.3d 9 (Wash. 2019) ....................................................................... *passim*

*Sandusky Wellness Ctr. v. ASD Specialty Healthcare*,
  863 F.3d 460 (6th Cir. 2017)......................................................................... 22

*Seattle Prof'l Eng'g Ass'n v. Boeing Co.*,
  991 P.2d 1126 (Wash. 2000)......................................................... 9, 12, 16, 20

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018), *cert. denied*, 139 S.Ct. 2743 (2019) .............. 22, 23

*United Steel Workers International Union v. ConocoPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010)............................................................................ 7

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Valentino v. Carter-Wallace, Inc.*,
 97 F.3d 1227 (9th Cir. 1996)................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .............................................................................. 7, 17, 22, 23

*Zinser v. Accufix Research Inst.*,
 253 F.3d 1180 (9th Cir. 2001).................................................................................. 8

**Statutes**

RCW 49.46.010(7) ..............................................................................................................11

RCW 49.46.020....................................................................................................................10

RCW 49.46.070..................................................................................................................4, 5

RCW 49.46.090...........................................................................................................*passim*

RCW 49.46.090(1) .........................................................................................................16, 22

Washington's Minimum Wage Act................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 23 ...............................................................................................6, 7, 14, 22

Fed. R. Civ. P. 23(a)............................................................................................................. 7

Fed. R. Civ. P. 23(b)............................................................................................................. 7

Fed. R. Civ. P. 23(b)(3) ..................................................................................................10, 17

Fed. R. Civ. P. 23(c)(1)(C) .................................................................................................. 6

WAC 296-126-021 ..........................................................................................................11, 20

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## I.  INTRODUCTION

Defendants move this Court to decertify the ABC Class. In late 2013, the parties submitted extensive class certification and other briefing discussing the issues in this case. After considering these materials, the Court's July 2014 Order granted class certification in part and allowed a Class to proceed on a claim challenging whether the Achievement Based Compensation ("ABC") plans used by Defendants ("XBS") paid minimum wage under Washington's Minimum Wage Act ("MWA"). Dkt 116. As the Court put it, the threshold legal issue was "whether the right to a minimum wage accrues on an hourly or weekly basis." *Id.* at 4.

Six years later, as the trial date approaches, the Class has acknowledged what XBS argued in 2013: the Class has no way to prove MWA violations on an hourly basis. In fact, the Class's sole expert, Dr. Jeffrey Munson ("Munson"), admitted that, in performing his analysis, he did not "use any compensation data or any hours data to assess whether a particular employee was paid above or below minimum wage in any particular hour" and "just didn't compare earnings to the minimum wage rates."[1] Dkt 186-1 at 34-35, 37.[2] After litigating for a "per hour" measure, the Class has abandoned that measure and apparently intends to prove its minimum wage case without discussing how or how much employees were paid or determining MWA compliance at all.

On a motion for decertification, the Class bears the burden to establish that the case remains appropriate for class treatment. The Class promised that it could prove its case on a class basis when the case was certified, but now that the case is past expert disclosure, discovery cutoff, and dispositive motion deadlines, the Class has not provided a plan for how it will do so. Instead, proof of liability and damages appear to require highly individualized assessments. At this point, the Class must provide

---

[1] Dr. Munson also admitted: "I did not evaluate, you know, what people were paid;" did not "use ABC pay or additional pay anywhere in [his] calculations;" and "only looked at the subsidy pay value and didn't examine any other pay data that might exist in the spreadsheet." Dkt 186-1 at 21, 42, 75.

[2] Declarations filed with XBS's Motion to Decertify are cited by declarant last name and paragraph or exhibit number (*e.g.*, Madden Decl ¶_ or Ex. _). Pages of the deposition transcript of Jeffrey Munson were filed at Dkt 186-1. Additional pages are attached to the Madden Decl and are cited as "Munson" with the line and page number (*e.g.*, Munson 1:1-2).

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 1
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

a plan for how it will prove liability and damages. If it has no such plan or if that plan demonstrates the case cannot be proven on a class basis, the class action should be decertified.

## II.  STATEMENT OF FACTS

### A.  Class Members Worked at Different Call Centers, Served Different Clients, Worked Under Different ABC Plans, and Earned Different Types of Pay

XBS was not one company, but many companies, formed by acquisitions over time and focused on different lines of business and clients. Dkt 54-7 (sealed) at 9. Since each company operated independently and had its own business objectives and management, *id.*, each call center used a variety of pay methods. While ABC plans with production minutes as a unit of work were a primary pay method during the Class period, agents received many different types of pay.

#### 1.  Hourly Pay

Agents were typically paid an hourly rate during training, which could last up to 90 days. *Id.* at 12. In addition, certain types of agents (QA, LPN, and escalation agents), and other employees were always paid hourly. Dkt 57 at 31-32;[3] Dkt 62 at 3. This hourly pay made no distinction between productive and nonproductive tasks and there is no question it complied with the MWA. 4,525 Class members received hourly pay for 74,532 workweeks during this period. Dkt 184-1 at 27.

#### 2.  ABC Plan Pay

ABC plans followed a general format, but the components that made up the heart of the plans were established at the call center level. Dkt 54-7 (sealed) at 12-13; Dkt 54-1 (sealed) at 12-14, 67-71 (Lacey); Dkt 54-1 (sealed) at 77-79 & 54-2 (sealed) at 55-59 (Kent Virgin America); Dkt 54-3 (sealed) at 18-20 & 54-4 (sealed) at 4-13 (Federal Way); Dkt 54-5 (sealed) at 1, 10-13 (Spokane Red Lion). ABC plans usually involved three pay types: (1) Additional Pay; (2) ABC Pay; and (3) Subsidy Pay.

Additional Pay: Agents received hourly Additional Pay for time spent on continuing training, meetings, work shortages, client system down time, and other activities specifically pre-approved by

---

[3] XBS cites to certain evidence in the record submitted in prior briefing on summary judgment or certification by docket number and page. In order to save space and be more convenient for the court, citations to Dkt 57 are intended to cite as well to the numerous exhibits summarized in documents and attached as exhibits to Dkt 57 as Dkt 57-1, 57-2, and 57-3.

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 2
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

management. Dkt 62 at 3. This was hourly pay at the minimum wage and there is no dispute it complied with the MWA. Surprisingly, Munson, did not know what Additional Pay was. Dkt 186-1 at 42.

<u>ABC Pay</u>: ABC Pay was calculated using qualitative (*e.g.*, customer satisfaction) and efficiency (*e.g.*, length of call) measures to determine an ABC Pay Rate, which was then multiplied by units of production to produce ABC Pay for the week. Dkt 62 at 3. ABC Pay was designed to reward strong performance. Dkt 63 at 4. While some used production minutes, each call center defined the units of production for its ABC plans, which could be calls, bookings, chats, sales, minutes on tasks, or any other unit. Dkt 62 at 2. Indeed, Munson states the Class's FEPS data included 27 columns of data reflecting piece rate pay for units of work other than production minutes. Dkt 174-3 at 6-7.

While Kent Travelocity never used production minutes, Lacey, Federal Way, Kent Virgin America, and Spokane used them as a non-exclusive unit of work, but used them very differently:

- In Lacey and Federal Way, production minutes only included handle time – that means time spent in "talk time + hold time + after call work."
- At Kent Virgin America, production minutes included inbound call (talk + hold + wrap) time, time spent waiting for calls, outbound call status, and time spent in the "default" aux code.[4] The only activities that did not produce production minutes were tasks paid at an hourly rate.
- In Spokane, all activities that were not counted as Additional Pay tasks counted as production minutes, except break time, which was built into and compensated by the ABC calculation.

Dkt 57 at 33-34; Dkt 54-1 (sealed) at 12-14, 67-71 (Lacey); Dkt 54-1 (sealed) at 77-79 & 54-2 (sealed) at 55-59 (Kent Virgin America); Dkt 54-3 (sealed) at 18-20 & 54-4 (sealed) at 4-13 (Federal Way); Dkt 54-5 (sealed) at 1, 10-13 (Spokane Red Lion). XBS's expert, Stefan Boedeker ("Boedeker"), found substantial differences in the production minutes generated at Kent and Federal Way. Dkt 184 at 16-17. Munson ignored these differences. *Id.* at 17.

<u>Subsidy Pay</u>: ABC plans were designed to assure compliance with minimum wage requirements. Dkt 62 at 5. The plans allowed agents to earn far more than minimum wage if they performed effectively, but also guaranteed that agents were always paid at least minimum wage during each workweek. *Id.* If the agent's average hourly rate for the week was less than the minimum wage

---

[4] Munson states that "waiting for calls, making outbound calls" do not generate production minutes. Dkt 174-3 at 7. This is not correct for Kent Virgin America and Spokane, which awarded production minutes for those tasks. Dkt 57 at 33-34.

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 3
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

rate, the difference was made up with Subsidy Pay so that the agent was always assured of making minimum wage for the week. *Id.* The plans provided that agents would not be paid less than a minimum Subsidy Pay Rate (set at the minimum wage rate) multiplied by the total hours worked in a week.[5] The subsidy pay rate set a floor. Dkt 62 at 5. A typical ABC plan stated:

> You will be paid an amount no less than 9.04 multiplied by the total number of hours you work in a work week. This Subsidy Pay Rate amount will be paid to you only if it exceeds the sum of your ABC Pay and Additional Pay for that work week.

*Id.* Subsidy pay was a lump-sum weekly amount and paid for both productive and nonproductive tasks.

### 3. Other Incentive Pay

Each call center provided agents with incentive pay in addition to ABC Pay to reward certain behaviors, like referrals, skills, sales, hitting targets, and extensive overtime. Dkt 57 at 38; Dkt 60-1 at 10 (Hill paid commissions), 34 (Hill paid bonuses "separate" from production pay), 57 (Richard paid incentives for "selling…accessories"). Incentive payments were usually paid for a week or pay period, and compensated for productive and nonproductive tasks. The FEPS data for the Class period included $6,241,856 in non-ABC incentive pay. Dkt 184 at 13. Munson's reports do not mention this pay and he did not use it in his calculations because counsel did not tell him to. Dkt 186-1 at 56-60.

### 4. Overtime Pay

Call centers paid overtime at 1.5 times the regular rate whenever an agent worked over 40 hours in a week. Dkt 62 at 6. Each week, an agent's non-overtime earnings were divided by the agent's work hours to determine the regular hourly rate, and an additional 0.5 was paid for overtime hours. *Id.*

### B. XBS Tracked Total Hours Worked Each Day, but Did Not Track Time Spent Generating What It Considered Units of Production

XBS tracked total hours worked each day (as required by RCW 49.46.070), by tracking time based on clock in and clock out times, not by unique activities. Dkt 61 at 5. XBS also used FEPS to capture ABC pay information for over 7,000 different units of work; however, FEPS did not track the

---

[5] As Justice Stephens explained in her dissent in *Hill v. Xerox Business Services*, 426 P.3d 703, 712 (Wash. 2018): "If an employee reports to work on Monday and leaves work on Friday without generating any 'production minutes' that week, the employee will still be paid at the applicable minimum wage rate for every recorded hour worked." Nevertheless, Munson would have labeled every hour in such a week as "unpaid time." Dkt 186-1 at 76-77.

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 4
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

time spent producing those units. *Id.* Even when the item type was labeled "minutes" or "productive minutes," FEPS merely tracked work units that were reported and not time. *Id.* Unlike a time clock that captures continuous periods of time based on clock in and clock out activity, the accumulation of production units (including production minutes) in the FEPS data did not reflect a continuous period of time. *Id.* Thus, there is no way to determine from FEPS data or pay reports whether an employee produced 1, 20, or 50 production units[6] (labeled a "minute" or otherwise) during any hour of time.[7] *Id.*

## C. XBS Paid Employees for Productive and Nonproductive Time Pursuant to Agreement Under the ABC Plans

Hill admitted that she understood that, other than for specific hourly tasks, "all hours worked were compensated by ABC pay." Dkt 110-1 at 95-97. This arrangement was set forth in the relevant ABC plan and XBS and Hill, the parties to that agreement, both agreed the ABC plan is not an hourly plan. *Id.* at 78, 80, 93-94, 104-5. This was explained in the XBS Employee Guidebook:

> Activity Based Compensation is offered in many [XBS] business units and departments. **ABC is a pay method under which employees are rewarded for individual efficiency, productivity and quality**…. With ABC we strive to provide income opportunities that **reward tangible effort and performance rather than the amount of time spent on the job.**

*Id.* at 108 (emphasis added). Hill signed a "Certification of Understanding – The ACS Achievement Based Compensation (ABC) Overview" that acknowledged she understood: "ABC is fundamentally a pay for performance system. As an ABC employee, **I get paid primarily based on what I produce** – in terms of both quantity and quality." *Id.* at 106, 81 (emphasis added). The ABC plan states:

> ABC Pay rates compensate you for all work time and activities (including time spent reviewing announcements, workspace care, logging on and off systems and recording time and work activities), except time spent on activities specifically assigned an hourly rate.

Dkt 62 at 4 (¶9). Considering these materials in the related *Douglas* case, this Court found:

---

[6] As the Ninth Circuit explained in *Hill v. Xerox Business Services*, 868 F.3d 758, 762 n.6 (9th Cir. 2017): "It is not the total hours worked, but the total minutes spent on incoming calls, that determines an employee's pay. So, even though two employees may work the same number of total hours, one will earn more money if, during those hours, he spends more time than the other agent on incoming calls—just like a person who picks more strawberries."

[7] In fact, the FEPS data shows that agents had more production minutes than recorded time on 7% of their work days. At times, this appears in large blocks of production minutes with corresponding large payments that could reflect pay adjustments or bonuses provided through production minutes. Dkt 184 at 8-9.

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 5
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

2

> [T]he Court reads the language of the ABC plan, coupled by Plaintiffs' own testimony, as demonstrating an understanding between Defendants and their employees that payment under the ABC plan would compensate "for all hours worked."

3

*Douglas v. Xerox Bus. Servs.*, 2015 WL 10791972, *8 (W.D.Wash. 2015) (JCC). So, regardless of

4

what the measure of compliance was for the MWA, the parties to the ABC plans agreed that ABC pay

5

was intended to pay for all productive and nonproductive time. Dkt 57 at 32-33, 35-36.

6

**D.    Procedural History**

7

XBS provides the following summary, noting that a complete procedural history is set forth in

8

Dkt. 183 at 12-15. After this Court denied XBS's motion for partial summary judgment to dismiss

9

10

Hill's minimum wage and overtime claims, Dkt 116, the Court certified the Order for immediate

11

appeal, Dkt 126 at 3. The Ninth Circuit made certain holdings, and certified the question of whether a

12

plan with a production minute metric qualifies as a piecework plan to the Washington Supreme Court

13

("WSC"). *Hill*, 868 F.3d at 763. A 6-3 majority of the WSC answered that the ABC plan was not a

14

piecework plan, but did not address whether the plan was hourly or other-than-hourly. *Hill*, 426 P.3d

15

at 708-10. Three dissenting justices found that ABC pay was other-than-hourly piecework. *Id.* at 708-

16

10. Based on the WSC's answer, the Ninth Circuit affirmed this Court's "denial of partial summary

judgment." Dkt 139.

17

18

**III.   ARGUMENT**

19

**A.    This Court Has an Independent Obligation to Ensure the Class Continues to Satisfy Rule 23 Requirements**

20

An order granting or denying class certification may be altered or amended at any time before

21

the entry of final judgment. Fed. R. Civ. P. 23(c)(1)(C). Until a final judgment has entered, a class

22

23

certification order is "not final or irrevocable, but rather, it is inherently tentative." *Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F.*, 688 F.2d 615, 633 (9th Cir. 1982). This rule provides

24

district courts with broad discretion to determine whether a class should be certified and to revisit that

25

certification as appropriate "throughout the legal proceedings before the court." *Armstrong v. Davis*,

26

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 6
NO.: 2:12-CV-00717-JCC

1    275 F.3d 849, 871 n.28 (9th Cir. 2001). "A district court may decertify a class at any time." *Rodriguez*
2    *v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

3            This Court also retains an independent obligation to perform a "rigorous analysis" to ensure
4    that the requirements of Rule 23 are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51
5    (2011). Based on discovery or other developments, a party may move to decertify the class on the
6    basis that the prerequisites and grounds for certification do not exist. *See Pierce v. Cty. of Orange*, 526
7    F.3d 1190, 1200 (9th Cir. 2008); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar System, Inc.*,
8    622 F.3d 1307, 1326 (11th Cir. 2010) (concluding that decertification was appropriate where the court
9    ultimately determined that damages cannot easily be calculated for all class members).The types of
10   "developments" that lead to modification or decertification can be evidentiary or legal. *See, e.g.*, 3
11   Newberg on Class Actions § 7:37 (5th ed.) (noting a court's authority over the subsequent litigation
12   requires it to ensure that the Rule 23 requirements "continue to be met" creating a "duty of monitoring"
13   class decisions "in light of the evidentiary development of the case").

14           Here, the developments are the passage of the expert disclosure deadline, the discovery cutoff,
15   and the dispositive motion deadlines, as well as the contents of the Class's expert's report and Motion
16   for Summary Judgment and the answers provided in Munson's expert deposition. It is now clear that
17   the Class has no viable method to prove its MWA claim on a class basis.

18   **B.    This Court Should Decertify the ABC Class Because the Class Cannot Meet Its Burden
         to Demonstrate It Can Prove Liability and Damages on a Class Basis**

19           The same standards used for analyzing class certification under Rule 23 of the Federal Rules
20   of Civil Procedure are applied when determining whether to decertify a class. *Marlo v. United Parcel*
21   *Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011). Even on a motion to decertify, the party seeking to
22   maintain class certification bears the burden of demonstrating that the Rule 23 requirements are
23   satisfied. *Id.* at 947-48. Because "[t]he party seeking [to maintain] class certification bears the burden
24   of demonstrating that the requirements of Rules 23(a) and (b) are met," *United Steel Workers*
25
26

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 7
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*International Union v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010), a plaintiff bears the burden throughout litigation to establish that certification remains proper, *Marlo*, 639 F.3d at 947-48.

As one aspect of maintaining certification, Plaintiffs must present a plan to conduct a class trial. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (quoting *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 454 (D.N.J. 1998)) (plaintiff "bears the burden of demonstrating a suitable and realistic plan for trial of the class claims"). Absent an acceptable trial plan, the court should decertify. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (decertifying class because plaintiff made no showing "of how the class trial could be conducted"); *Espenscheid v. DirectSat USA, LLC*, 2011 WL 2009967, *17 (W.D.WI 2011) (decertifying class because plaintiffs failed to "propos[e] a trial plan that would lead to a fair result"), *aff'd*, 705 F. 3d 770 (7th Cir. 2013).

Decertification is proper when the court determines that the plaintiffs have not presented a viable plan to try issues of liability and damages on a class basis. *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 628-30 (S.D. Cal. 2014), aff'd, 673 F. App'x 783 (9th Cir. 2017), abrogated on other grounds by *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018); *Marlo v. United Parcel Serv.*, 251 F.R.D. 476, 480 (C.D.Cal. 2008) (decertifying class because plaintiff relied on purportedly common evidence that was "neither reliable nor representative of the class"), *aff'd*, 639 F.3d 942 (decision to decertify did not constitute abuse of discretion). Decertification also is proper where a trial would turn into individualized inquiries and mini-trials that would render the trial unmanageable. *Marlo*, 251 F.R.D. at 486.

1.      **As This Court, the Ninth Circuit, and the WSC Have Held, MWA Compliance Can Be Determined on an Hourly or Workweek Basis**

Under the MWA, minimum wage compliance may be measured by the hour or workweek. *Hill*, 868 F.3d at 759 (by the hour for hourly employees; by the workweek for non-hourly employees); Dkt. 116 at 4; DLI Admin. Policy ES.A.3 at 2. As XBS discussed in Dkt 183 at 22-25 (SJ Cross-Motion), the measure of compliance under the MWA depends on how a Class member was paid.

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 8
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**2.      Plaintiff Argued that MWA Compliance for the Class Is Determined "Per Hour"**

In the Motion for Class Certification (as well as the Opposition to XBS's motion for partial summary judgment) in 2013, the Class argued that "Washington employees retain a per-hour right to minimum wage" and that "Washington law 'employs the per-hour standard for determining minimum wage compliance.'" *E.g.*, Dkt 39 at 14. In fact, the Class submitted historical interpretations from Program Managers for the Washington Department of Labor and Industries ("DLI") emphasizing that MWA compliance is measured for each distinct hour of work. *See, e.g.*, Dkt 95-2 at 11, 17 (DLI Program Manager Greg Mowat in *Alvarez* stating MWA "requires that hourly paid employees be paid at least the statutory wage for *each* hour that they work" and in *SPEEA* stating "*Each* hour worked must be paid at a rate not less than the minimum" (emphasis in originals)); Dkt 97 Decl. of Lynne Buchanan at 2 (DLI "uses a per-hour measure to determined minimum wage compliance" and "Each hour worked must be paid at a rate not less than the minimum hourly rate" (emphasis in original)).

**3.      Plaintiff Never Addressed How to Prove Liability or Damages on a Per Hour Basis**

While arguing for a "per-hour standard for determining minimum wage compliance,'" Dkt 39 at 14, the Class told this Court that "[d]etermining the amount of unpaid work time for ABC class members will be a mechanical exercise based on Xerox's own payroll data" "through a comparison of clock time and production minutes," *id.* at 18-19 ("FEPS data…show…discrepancy between the 'Time Card Time' that Ms. Hill worked and the ABC time Xerox actually paid"). The Class confidently assured this Court that, **"[f]or the ABC Class, Xerox's own FEPS payroll data can be used to show liability and damages on a class-wide basis."** Dkt 39 at 34 n.18 (emphasis added).

XBS objected to this proposed method of proof in its Opposition to Class Certification. Dkt 56 at 24 ("Hill cannot simply assume liability and damages, and must present a viable plan for determining both."). As XBS explained, the Class identified no way to prove MWA violations or damages:

> If minimum wage violations are determined for each hour, Hill will have to prove that the productive minutes in each hour were not sufficient to satisfy minimum wage. For example, if an agent had 45 productive minutes in an hour at $0.23 per minute, the agent would have

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1
2
3
4
5
6

received $10.35 for that hour and no minimum wage violation would exist. The law does not require, and Defendants do not have, records with this type of detail. And, Hill has not identified any method for accomplishing this hour-by-hour analysis.
…………
…Hill has not even tried to "establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)," and that those damages will be "consistent with its liability case" as required under *Behrend*, 133 S.Ct. at 1433. How Hill intends to prove particular productive minutes were paid or not paid for particular hours consistent with their liability theory remains a mystery. They provide no litigation plan or workable damages model to accomplish this.…issues regarding Defendants' defenses will create individual issues. These include their entitlement to an offset under RCW 49.46.090….

7
8
9
10

*Id.* at 25. Plaintiff brushed aside XBS's objections, arguing that damages would be easy to calculate: "This will entail a simple exercise of subtracting the paid time (minutes paid with ABC pay and time spent in hourly-paid activities) from the total recorded work time to get total unpaid time [which] can be multiplied by the minimum wage, less any subsidy pay, to determine damages." Dkt 76 at 9-10.

11
12
13
14
15

XBS continued to object, pointing out in its Motion for Reconsideration that "Plaintiff has failed to identify any manageable way of calculating individualized damages" and "Plaintiff's only possible solution is to determine liability and damages on a weekly or aggregate level," Dkt 117 at 5-6, but "Plaintiff's entire complaint is premised on the idea that such weekly, aggregate determinations (even though directed by ES.A.3) are somehow improper." *Id.*

16

### 4.   Proof of MWA Liability Depends on an Individualized Assessment of How and How Much Class Members Were Paid

17
18
19
20
21
22

RCW 49.46.020 requires employers to pay their employees "wages at a rate of not less than [the applicable minimum wage] per hour." *Sampson v. Knight Transp., Inc.*, 448 P.3d 9, 12 (Wash. 2019). No one disputes that Class members must be paid the minimum wage "for each hour worked." Instead, this case involves two key liability questions: (1) what measure should be used to determine MWA compliance for each employee and workweek; and (2) whether, under the relevant measure, any MWA violation occurred.

23
24
25
26

As an initial matter, every court has held that hourly or workweek standards can be used to determine MWA compliance, depending on how employees are paid. *E.g.*, *Hill*, 868 F.3d at 759; Dkt. 116 at 4. In this case, the Class's MWA claim requires an assessment of each Class member's

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 10
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

compensation, presumably on a workweek basis, to determine what measure of compliance should apply. Most were paid, at least for one day, based on production minute calculations under an ABC plan.[8] However, 36% of all work days did not involve production minutes. Dkt 184-1 at 52. Some Class members were paid at a fixed hourly rate outside of the ABC plans. *Id.* at 27. Other Class members were paid using piece rate measures (such as calls and documents) under the ABC plans. *Id.* at 26. Of the remaining 64% of work days that involved production minutes, many also involved weekly subsidy pay[9] under the ABC plans and/or other types of incentive pay and adjustments[10] outside of the ABC plans. Dkt 184 at 12-14, Dkt 184-1 at 26-29; Dkt 57 at 38. This Court must address how to measure MWA compliance when such non-production minute pay stands on its own or is combined with ABC production minute pay. *See* Dkt. 183 at 24; *Sampson*, 448 P.3d at 14 (WAC 296-126-021 "permits all forms of compensation paid in a workweek to be added together to determine MWA compliance when an employee is paid 'partially' on a piecework basis"); DLI Admin. Policy ES.A.3 at 2 (workweek measure when employee is paid commissions or other-than-hourly pay). All these types of pay count as "wages"[11] and are considered when determining minimum wage compliance.[12] DLI Admin Policy ES.A.3 at 3 (all forms of pay except vacation and holiday pay, tips, gratuities, and service charges are included in minimum wage calculation). In its Cross-Motion for Summary Judgment, Dkt 183 at 28, XBS requests summary judgment in relation to any workweek that involves piecework, commissions, or other weekly compensation, which should (if XBS's motion is granted) limit this case to those weeks when Class members were paid <u>exclusively</u> by ABC pay

---

[8] Munson identified 21 Class members who did not have a single production minute in XBS's FEPS data. Dkt 184 at 7-8.

[9] In the FEPS data, weekly subsidy pay for Class members totaled $4,888,613.87. Dkt 184-1 at 28.

[10] The FEPS data includes detailed information for non-ABC pay totaling $6,241,856 in the following categories: language, skill, and shift differential pay; incentive, discretionary, and retro incentive bonus pay; wage determination adjustments; corrupted and deleted batch pay; results-based compensation pay; and retro nondiscretionary pay. Dkt 184 at 12-13.

[11] "'Wage' means compensation due to an employee by reason of employment." RCW 49.46.010(7). *Byrne v. Courtesy Ford, Inc.*, 32 P.3d 307, 309 (Wash. Ct. App. 2001).

[12] *E.g., Sampson*, 448 P.3d at 14 ("The only payments that are not included in the total wages calculation are vacation pay; holiday pay; and any gratuities, tips, or service fees."); *Inniss v. Tandy Corp.*, 7 P.3d 807, 815 (Wash. 2000) (recognizing that "commissions, [special incentive bonuses] and bonuses (including annual bonuses) are included" when determining compliance with the statutory minimum wage).

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 11
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

based on production minutes. If the Court does not grant that motion (perhaps because it requires an assessment of the type and amount of non-production minute pay provided), then the process of sorting through each Class members pay for each week is the type of individualized assessment that defeats class certification. *David v. Bankers Life and Cas. Co.*, 2015 WL 3994975, *8 (W.D.Wash. 2015) (decertifying class because [c]lass treatment would be unmanageable given the need for individualized inquiry").

Workweeks when Class members were paid exclusively by ABC production minute pay involve a threshold legal determination – whether minimum wage compliance is determined by the workweek (because ABC pay is "other than hourly") or by the hour (as the Class has contended) – however, once that threshold issue is resolved, individualized issues may overwhelm any remaining shared issues. If the Court finds that a workweek standard applies, summary judgment is warranted. In contrast, if the Court finds that an hourly MWA compliance standard applies, that does not resolve the issue of liability and application of that standard is highly individualized. To determine compliance under the hourly standard, the relevant question is whether earnings attributable to each hour satisfy the minimum rate. As the WSC explained, unlike "workweek averaging, [where] an employee's high producing hours are used to offset their low producing hours," "the employee may have earned less than the minimum wage during certain hours of the week" under the hourly standard. *Hill*, 426 P.3d at 706. The WSC and Ninth Circuit have repeatedly noted this is a "per hour right." *Id.* at 709 ("each hour worked"); *Hill*, 868 F.3d at 759-60 ("per-hour right," "per-hour calculation"); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 912 (9th Cir. 2003). The WSC and Ninth Circuit did not hold that every minute (or fraction of a minute) must be assessed for minimum wage compliance. In fact, the WSC has held that the MWA does not "provide any remedy for an employer's failure to pay an employee for all time worked." *Seattle Prof'l Eng'g Ass'n v. Boeing Co.* ("*SPEEA*"), 991 P.2d 1126, 1132 (Wash. 2000). And, in *Sampson*, 448 P.3d at 17, the WSC rejected Class counsel's argument that the MWA requires separate payment for non-productive minutes. As the WSC recognized in this case, "high producing hours" will satisfy the minimum wage, and the relevant question is whether "the employee may have

earned less than the minimum wage during certain hours of the week." *Hill*, 426 P.3d at 706. These statements would not make sense if a plaintiff did not have to prove a shortfall in particular hours.

In this case, proof of per hour shortfalls cannot be accomplished on a class basis. As a threshold matter, it is important to understand that "production minutes" are not a continuous measure of time. Dkt 184 at 8-9; *Hill*, 868 F.3d at 762 n.6; *Hill*, 426 P.3d at 710-14. Instead, they are an accumulation of seconds spent doing certain tasks. Dkt 61 at 5. Thus, an employee who spends 50 seconds on activities that generate production minutes and 10 seconds on activities that do not will not have a production minute after a minute of clock time. If an employee accumulated 50 seconds per minute over six minutes, the employee would end up with five production minutes from those six minutes. Dkt 186-1 at 50-54. Similarly, over an hour, such an employee would accumulate 50 production minutes. *Id.* If that employee was paid $0.20 per production minute, the employee would earn $10 for that hour, which would be above the minimum wage.[13] Dkt 186-1 at 50-54. In contrast, if the employee only received $0.15 per production minute, the employee would receive $7.50 in ABC pay for that hour and, absent additional subsidy or other incentive pay, would fall short of the minimum wage rate.[14] The issue for determining hourly liability is how to allocate production and nonproduction minutes to each work hour. Munson acknowledged that nonproduction minutes were spread through the work day; however, he made no attempt to allocate them to specific hours, had no information that would allow him to do so, and made no effort or request to find such information. Dkt 186-1 at 68, 31, 54, 67-68. In fact, the Class has provided no evidence of hours paid below the minimum wage.

The Class has identified no plan to prove liability for the numerous non-hourly forms of pay shown by FEPS nor for any hourly forms of pay.

---

[13] As the ABC plans reflect, XBS and Class members agreed that ABC pay from production minutes paid for all productive and nonproductive time. Dkt 62 at 4 (¶9); *Douglas*, 2015 WL 10791972 at *8. Even if this cannot be done on a workweek basis, there is no basis for rejecting this agreement on an hourly level.

[14] As discussed below, RCW 49.46.090 provides that damages are measured by subtracting the amount paid in the hour from the minimum wage rate.

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 13
NO.: 2:12-CV-00717-JCC

1

2

**5.** **The Class Does Not Even Attempt to Demonstrate a Method to Prove Liability on a Class Basis**

Despite its assurance six years ago that, "[f]or the ABC Class, Xerox's own FEPS payroll data can be used to show liability and damages on a class-wide basis," Dkt 39 at 34 n.18, the Class provides no plan to prove liability on a class basis under the hourly standard for which they argue. Nor does it even try to demonstrate how it could prove this liability. As pointed out in XBS's Summary Judgment Cross Motion, the Class failed to provide evidence of specific hours and pay, or any hours that fell below the minimum wage when considering compensation relevant for that hour. As discussed above, there are varying pay methods shown by the FEPS data and the measure of compliance could be the workweek for non-hourly pay and the hour for hourly pay. The class has no plan to prove liability under either measure of compliance on a class basis. Moreover, a per-hour MWA compliance standard is simply incompatible with the Class's attempts to count non-production minutes regardless of whether they were paid.

Indeed, the Class has disclosed its expert and the time for any additional disclosure has passed. Munson's testimony regarding the FEPS data is the only evidence the Class has presented regarding liability or damages.[15] Munson did not even try to provide a liability analysis, nor does he attempt to determine whether any hourly violations occurred. His analysis excludes large numbers of employees and workweeks as having no damages (but cannot explain why, other than to explain that Class counsel told him to do it that way). Ironically, in a minimum wage case, Munson candidly admitted he ignored virtually all compensation paid to Class members: he (1) only considered subsidy pay; (2) did not "use ABC pay or additional pay anywhere in [his] calculations," Dkt 186-1 at 42; and (3) did not include language, skill, and shift differential pay; incentive and discretionary bonus pay; RBC pay; retro pay; and wage adjustments in his calculations, *Id.* at 56-60. He also testified he did not use compensation

---

[15] As part of its "rigorous analysis" regarding whether the Class continues to meet Rule 23 criteria, this Court should resolve factual disputes such as the weight and persuasiveness of conflicting expert testimony. *Marlo*, 639 F.3d at 949. The Court should consider issues of admissibility when reviewing evidence for class certification decisions, but should not rule on admissibility and instead focus on "analyz[ing] the 'persuasiveness of the evidence presented' at the Rule 23 stage." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

or hours data "to assess whether a particular employee was paid above or below minimum wage in any particular hour." *Id.* at 34-35. And, he admitted that he "didn't compare earnings to the minimum wage rates:"

> Q.     Okay. Did you -- and again, I just want to be clear, you never determined whether class members were paid above or below for the rate on a per hour basis, correct?
> ……
> A.     Correct, nor did I do it on a per day basis or a per week basis. I didn't -- I just didn't compare earnings to the minimum wage rates.
> Q.     (BY MR. MADDEN) Okay. Did you review all of the Xerox data carefully to see whether or not that type of calculation could have been made using data in the columns that counsel didn't identify?
> ……
> A.     No, I didn't -- I didn't explore calculating -- calculating that or making that comparison.
> Q.     (BY MR. MADDEN) Okay. And so I take it you did not find any way to make a per-hour assessment based on that data?
> ……
> A.     No. I didn't look for one. I -- and given my understanding of the data, there is no way to know a per -- an hour-by-hour accounting of the work given there's just simply one -- one total for each day provided.

*Id.* at 37-38. Indeed, Munson confirmed that he made no attempt to determine wage compliance on an hourly basis:

> Q.     (BY MR. MADDEN) Okay. And to be clear, you didn't do any type of hourly evaluations like this in your report, did you?
> A.     That is correct. The data I had has no information on an hour-by-hour basis.
> Q.     And so you looked at all the data and you concluded that there was nothing there that would allow you to do that type of calculation for particular hours, correct?
> ……
> A.     I just -- the type you are -- in what I spoke to in the hypothetical was a continual calculation of every second on a -- on an inbound call as being what production minutes are, yes, I didn't explore whether that type of data existed or not.

Munson 114:22-115:11 (Madden Decl Ex. A).

The Class has not demonstrated even a single violation of the hourly standard for minimum wage compliance, let alone a uniform violation for each member of the Class. Rather than providing evidence of any minimum wage violation, the Class essentially asked this Court to assume liability in its Motion for Summary Judgment. Dkt 175. But XBS refuted those arguments. Dkt 183.

Classes that do not provide a plan for how they can prove liability on a class basis should be decertified. *Stiller*, 298 F.R.D. at 628-30; *Ordonez v. Radio Shack, Inc.*, 2014 WL 4180958, *6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  (C.D.Cal. 2014) ("the issue is whether classwide methods of proof exist to show that [state] law was
2  actually violated" and certification denied because the "absence of records that are easily aggregated
3  and analyzed [to prove liability] presents an insurmountable manageability concern").

4  **6.      The Class Fails to Demonstrate Any Ability to Prove Damages on a Class Basis**

5  Unlike liability, which the Class did not even attempt to address, the Class has proposed a
6  method to prove damages. Nevertheless, that method has no connection to the Class's theory of
7  liability, thus the Class once again fails to demonstrate an ability to prove its case on a class basis.

8  Under Washington law, the remedy for minimum wage violations is specified by statute.
9  "RCW 49.46.090(1)…sets the statutory measure of damages for minimum wage violations by
10  mandating that an employer who pays an employee less than the wages to which he or she is entitled
11  shall be liable to the employee 'for the full amount of such wage rate, less any amount actually paid
12  to such employee.'" *SPEEA*, 991 P.2d at 1132 (employee can "recover wages representing the
13  difference between the statutory minimum wage and what was actually paid"); *accord Champagne v.*
14  *Thurston Cty.*, 178 P.3d 936, 944 & n.12 (Wash. 2008). RCW 49.46.090 is "[t]he sole available
15  remedy for such violations," *McConnell v. Mothers Work, Inc.*, 128 P.3d 128, 132 (Wash. Ct. App.
16  2006), and the MWA does not "provide any remedy for an employer's failure to pay an employee for
17  all time worked," *SPEEA*, 991 P.2d at 1132 ("recovery under the WMWA is limited to the statutory
18  minimum wage").

19  For those pay methods in the FEPS data that use a workweek compliance standard, the Class
20  has agreed, and this Court and the Ninth Circuit have found, that XBS complies with the MWA. This
21  Court can summarily dismiss all such claims. But, to the extent this Court determines that a per-hour
22  measure applies to some Class members or workweeks and that some hours were paid in violation of
23  that standard (which would be unwarranted in this case), the Class has not identified any method to
24  assess damages for such per-hour violations. Instead, its method adds up production minutes on a
25  workweek basis (whether paid or unpaid), and has nothing to do with per-hour violations. Such a
26  discrepancy requires decertification. *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

In *Comcast*, the plaintiffs alleged four antitrust violations against the provider of cable television services. *Id.* at 29–32. The plaintiffs' damages expert had devised a method for calculating what the competitive prices would have been but for the four antitrust violations so that damages could be calculated by comparing that baseline to the actual charges incurred. *Id.* at 36-38. However, when the district court certified only one of the antitrust violations for class treatment, the plaintiffs did not revise their damages calculation. *Id.* The district and appellate courts found no error with the plaintiffs' failure to tie each antitrust theory to a specific damages calculation. *Id.* As the appellate court explained, because the plaintiffs had "'provided a method to measure and quantify damages on a classwide basis,' [ ] it [was] unnecessary to decide 'whether the methodology [was] a just and reasonable inference or speculative.'" *Id.* (quoting *Behrend v. Comcast Corp.*, 655 F.3d 182, 206 (3rd Cir. 2011)). The Supreme Court disagreed, concluding that, "[u]nder that logic, at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.* (emphasis in original). The Court concluded that the district court must conduct a "rigorous analysis" to ensure that the plaintiffs' damages case is consistent with its liability case. *Id.* at 35 (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

In this case, the Class intends to rely on a damages methodology that is completely divorced from its theory of liability. The disconnect is obvious in the Munson expert report, and is highlighted by Munson's testimony. Put simply, despite RCW 49.46.090's straight-forward requirements, Munson made no attempt to determine what Class members were paid, whether the amounts paid satisfied minimum wage requirements, or what the difference was between the amounts paid and the statutory minimum wage requirement.

Initially, Munson did not determine or consider what employees were paid. Dkt 186-1 at 20 ("[W]hat somebody was paid was never…I was never asked to examine that or evaluate that, calculate that….in this case I wasn't asked to examine the compensation at all."). As Munson admitted:

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

> Q. [A]re you telling me that you labeled something unpaid time without looking at what compensation was provided to the employee?
> A. I'm telling you that….true, I did not evaluate, you know, what people were paid.

*Id.* at 21. Thus, in performing his calculations, Munson completely ignored ABC Pay (for both production minutes and piecework), Additional Pay, pay differentials, pay adjustments, bonuses, commissions, and other incentive pay. *Id.* at 75 (he "only looked at the subsidy pay value and didn't examine any other pay data that might exist in the spreadsheet").[16] Munson did this because Class counsel told him to do so:

> Q. Did you peer review your decision to run calculations this way with anyone other than plaintiff's counsel?
> A. No. And I would say my decision to run it this way was simply implementing the…assumptions I was provided and to carry out the task I was asked to, to calculate unpaid time defined this way.

*Id.* at 21, 60. Munson swore he did not "know whether any of these payments applied to the time that [he] identified as unpaid time," he understood the exclusion of pay could impact his calculations, and he did not "make an independent professional assessment as to whether or not [compensation data] should or should not be included" in his analysis. *Id.* at 34, 60.

Munson also made no attempt to determine whether Class members were paid above or below the minimum wage in any hour (or for any other period). *Id.* at 34-35 (did not use compensation or hours data "to assess whether a particular employee was paid above or below minimum wage in any particular hour"), 54 (did not do "any type of hourly evaluations"), 87 ("made no determination as to whether class members were paid above or below the minimum wage in any specific clock hour").[17]

---

[16] *See also* Dkt 186-1 at 33 ("didn't use any compensation data other than subsidy pay"), 42 (did not "use ABC pay or additional pay"), 56-60 (did not include language, skill, and shift differential pay; incentive and discretionary bonus pay; RBC pay; retro pay; and wage adjustments because counsel did not ask him to include them), 80 ("calculation of damages…does not include any credit for… language, skill and shift differentials,…incentive or discretionary bonuses,…[and] retroactive wage payments or wage adjustments"), 83-84.

[17] *See also* Dkt 186-1 at 62-63 ("methodology did not involve any analysis of specific hours in a day to determine whether each hour was paid above or below the minimum wage"), 66-67 ("My analysis made no reference to what somebody was paid.… I'm simply counting the…difference between total hours worked and then subtracting these production minutes and…the result is the unpaid minutes. So there is no clock hour reference in these data nor in my analysis."), 70 ("I didn't perform any analysis ever about whether a minimum wage violation occurred"), 80 ("calculation of damages…does not reflect an hour-by-hour assessment of whether class members were paid above or below the minimum wage in any particular hour").

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    As he explained: "I just didn't compare earnings to the minimum wage rates" and did not review

2    "Xerox data carefully to see whether that type of calculation could have been made." *Id.* at 37-38 ("I

3    didn't look for [a way to make a per hour assessment]"). Ironically, Munson's methodology ignores

4    the very issue that has been litigated in this case for years: Hill arguing for minimum wage for each

5    hour (and not on a workweek basis). In *Hill*, 426 P.3d at 706, the WSC describes the issue as whether

6    an "employee may have earned less than the minimum wage during certain hours of the week." Instead

7    of performing this hourly analysis, Munson did some daily calculations and otherwise admitted his

8    damage "calculations were performed on a week-by-week basis." Dkt 186-1 at 90; *see also* Dkt 184

9    at 14.

10       Finally, rather than calculating the difference between minimum wage and what was paid for

11   each hour as required by RCW 49.46.090, Munson adopted a simplistic, but very flawed methodology.

12       First, Munson took nonproduction minutes from different hours (regardless of whether the

13   hour was paid above or below the minimum wage) and labeled them unpaid time. Munson testified

14   that "unpaid" was "a label" from counsel, and he was "not attesting under penalty of perjury that it is

15   or it is not unpaid." Dkt 186-1 at 55.[18] Regardless, his process presents a number of issues. Initially,

16   although Munson recognized that production minutes were interspersed and "accruing over the course

17   of a day," *id.* at 68, 51-52; Dkt 62 ¶8; Dkt 61 ¶10, he made no attempt to determine the allocation of

18   production minutes throughout the day. Dkt 186-1 at 31 ("didn't look into" "how many production

19   minutes were created…in any specific hour"), 69, 74. As Boedeker testifies, it is appropriate to assume

20   an even distribution, and there is no basis for assuming that all nonproduction minutes occurred

21   together in a single clump (which is what Munson did). Dkt 184 at 19. This means that Munson

22   counted time that was paid above the minimum wage as unpaid time. For example, if an agent

23   generated 50 production minutes in an hour and ABC calculated $0.20 per production minute, the

24   ───────────────

25   [18] *See also* Dkt 186-1 at 36 ("is not intended to be a statement of fact"), 36-37 (did not "conduct any independent investigation to determine whether or not any particular class member was or was not paid time for specific hours"), 76 (unpaid time was "a placeholder" and "a label" and, even in his calculations, was not actually unpaid time because, "at this stage, yes, the subsidy pay had not yet been accounted for"), 77 (admitting "some of what [he] calculated…as unpaid hours earnings were in fact paid by the subsidy pay").

26

agent was paid $10 for that hour, which was above the minimum wage. Dkt 186-1 at 53-54 (admitting 50 times $0.20 would be $10 for that hour and, "[i]n this scenario, $10 is more than 9.32 which is the highest [minimum wage rate] on [my] list"). Nevertheless, Munson "didn't do any type of hourly evaluation like this" and counted the 10 minutes as unpaid time. *Id.* at 54, 67-68 (counted nonproduction minutes as unpaid even if over the minimum wage for the hour, admitting "I don't know what people were or weren't paid…that wasn't part of this…analysis"). At a minimum, he made this mistake in tens of thousands of days. Dkt 184 at 14-15. Munson's count of nonproduction minutes is thus entirely disconnected from his claim of MWA violations and is inconsistent with Washington law.[19] *Sampson*, 448 P.3d at 16-17 (rejecting Class counsel's attempt in that case to void WAC 296-126-021 and to create a separate claim for nonproductive time); *SPEEA*, 991 P.2d at 1132 (holding that the MWA provides no claim for unpaid time).

Second, Munson multiplied alleged "unpaid time" by the minimum wage rate to obtain "unpaid wages." When there was one nonproduction minute in a day, Munson combined it with other nonproduction minutes from other days to create unpaid hours even if every hour in those days were paid above the minimum wage. Dkt 184 at 14. In contrast, if there was one excess production minute in a day, Munson disregarded it. In fact, Munson simply deleted extensive amounts of production minute time and pay for days with more productive minutes than work hours without determining for what the production minutes and pay were intended to compensate. *Id.* at 8-9. In total, he removed over 56,000 "productive hours" or 3.3 million production minutes from his calculation. Dkt 186-1 at 71-72. This amounts to about $630,000. Dkt 184 at 8-9.

Third, Munson then took the alleged "unpaid wages" and subtracted subsidy pay. Munson acknowledged that subsidy pay was only designed to bring an employee up to minimum wage; however, his methodology resulted in an excess of $664,775.16 in subsidy pay and he promptly

---

[19] Munson's "production minute" analysis highlights two other issues. First, it shows that "production minutes" are not a measure of time: over 7% of the days had more production minutes than hours (including days with thousands of excess production minutes and pay). *Id.* at 8-9 (these are likely to reflect weekly adjustments or bonuses). Second, Munson not only failed to identify, investigate, or explain these anomalies, but he also systemically disregarded them in his analysis.

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 20
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

eliminated this amount from his calculations. *See* Dkt 186-1 at 78-79. Noticeably absent from this last phase is any attempt to account for the millions of dollars of non-ABC differentials, commissions, bonuses, and pay adjustments that Class counsel told Munson not to consider even though the law provides otherwise. *See Inniss*, 7 P.3d at 808 ("commissions, [special incentive bonuses] and bonuses (including annual bonuses) are included" when determining compliance with the statutory minimum wage); DLI Admin. Policy ES.A.3 at 3.

Finally, Munson testified that he had never used a process like this in any past case where he was an expert. Dkt 186-1 at 24. Nevertheless, he did not have a compensation expert review his methodology and he did not "do anything to test or confirm the conclusions [he] reached in this calculation beyond simply running the calculations." *Id.* at 65, 62. Interestingly, when asked about his damages calculation, Munson testified that he is "not personally swearing under penalty of perjury that this is the specific amount[] that each person is owed." *Id.* at 84, 87. And, he further admitted that he never did "anything to confirm the truthfulness of any of [the] assumptions" upon which his calculations relied and that, "if you modify any of the assumptions" that can impact the calculations. *Id.* at 87, 84.

The Class's proposed damages methodology is disconnected from its theory of liability and fails to comply with the statutory damage standards in RCW 49.46.090. In circumstances like this, where the proof of damages does not flow from the proof of liability, continuing certification of a class action is not appropriate. *See Brady v. AutoZone Stores, Inc.*, 2018 WL 3526724, *5 (W.D.Wash. 2018) ("as the Supreme Court has ruled, individualized damage issues can defeat predominance if they 'overwhelm questions common to the class.'") (quoting *Comcast*, 569 U.S. at 34); *Britton v. Servicelink Field Servs., LLC*, 2019 WL 3400683, *6-8 (E.D.Wash. 2019) (denying certification for lack of predominance after analysis of plaintiff's expert testimony finding "Plaintiffs have failed to present a viable methodology for calculating damages"); *Blough v. Shea Homes, Inc.*, 2014 WL 3694231, *14, *16 (W.D.Wash. 2014) (citing *Comcast* finding "the recovery that they seek does not parallel [plaintiff's] theory of liability" and denying certification because, in part, "Plaintiffs have not

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 21
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

shown that classwide damages can be ascertained and apportioned in this case in a way that is both manageable and preserves Defendant's right to litigate individualized defenses").

**C.    The Class's Proposed Method of Proving Damages Deprives XBS of Certain Valid Defenses Such as the Right to Offset All Payments Made to the Class**

As the Supreme Court has held, defenses must be considered in class certification decisions:

> Because the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right"…a class cannot be certified on the premise that [defendant] will not be entitled to litigate its… defenses to individual claims.

*Dukes*, 564 U.S. at 367. Similarly, the Ninth Circuit holds that (1) a plaintiff has the burden to prove that affirmative defenses do not defeat predominance, and (2) "[d]efenses that must be litigated on an individual basis can defeat class certification." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018), *cert. denied*, 139 S.Ct. 2743 (2019). In *True Health*, the Ninth Circuit articulated a specific test for predominance and affirmative defenses: "[s]ince [defendant] bears the burden [to prove defenses], we assess predominance by analyzing the [affirmative] defenses [defendant] has actually advanced and for which it has presented evidence." *Id.* "A defendant can produce evidence of a predominance-defeating [affirmative] defense in a variety of ways." *Id.* at 931-32 (*citing Sandusky Wellness Ctr. v. ASD Specialty Healthcare*, 863 F.3d 460, 468-70 (6th Cir. 2017)). *Sandusky Wellness* explained that "'[t]he mere mention of a defense is not enough to defeat the predominance requirement," but that a defendant's production of "concrete evidence" that makes individual assessment "a tangible reality for the district court" is sufficient to defeat certification. 863 F.3d at 469.

Here, DLI Admin. Policy ES.A.3 at 3 states that all forms of pay except vacation and holiday pay, tips, gratuities, and service charges must be included in minimum wage calculations, and RCW 49.46.090(1) states that the statutory measure of damages for minimum wage violations is the full amount of any unpaid minimum wage rate **less any amount actually paid to such employee**. The entitlement to include all pay in the assessment of liability and the entitlement to offset any compensation paid against damages is not the "mere mention of a defense," rather it is a "concrete" 6

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 22
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

million dollar reality based on expert testimony. *See* Dkt 184 at 13. At a minimum, the Class's proposed method of proving liability and damages ignores millions of dollars in compensation amounts paid as incentives (commissions, bonuses, or other incentives) and pay adjustments, as well as hundreds of thousands of dollars of subsidy pay and hundreds of thousands of dollars paid for production minutes that Munson simply disregarded. *See id.* at 9, 13; Dkt 186-1 at 78-79. In addition, at a more fundamental level, the Class's proposed methodology ignores all ABC Pay and Additional Pay and thus denies offsets for those amounts under RCW 49.46.090.

That these amounts of compensation exist, were paid, and were ignored by the Class's proposed method of proof is established by Munson and Boedeker's testimony. What must yet be established is precisely what this compensation was, why and how it was paid, for what periods of time it was paid, and to what hours, days, or weeks it should be applied. But, these matters are likely to involve individualized proof. Once these individual assessments are made, then these compensation amounts can be applied to the correct employees for the correct hours, days, and weeks, and liability and damages can be correctly determined. Proceeding with the Class's methodology would mean that XBS would "not be entitled to litigate its…defenses." *Dukes*, 564 U.S. at 367. It is the <u>Class's burden</u> to establish that these defenses can be fully and fairly litigated by XBS and still satisfy predominance and superiority. *True Health.*, 896 F.3d at 931. The Class cannot meet this burden, thus decertification is warranted. *See Brady*, 2018 WL 3526724, at *5 (denying class certification in part on basis of individual affirmative defenses); *David*, 2015 WL 3994975, at *8 (court decertified class for lack of predominance in case under MWA because "Plaintiffs have not presented common evidence permitting a classwide determination" of defense).

## IV. CONCLUSION

Over six years ago, Class counsel assured this Court that the Class could use FEPS data to easily determine liability and calculate damages in this case on a class basis. The Class has not fulfilled that promise. Instead, the Class has offered no manner for determining per-hour minimum wage liability on a class basis and has proposed a damages methodology that is disconnected from its theory

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 23
NO.: 2:12-CV-00717-JCC

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   of liability and fails to comport with the statutory requirement. Under these circumstances, the Court

2   should decertify the ABC class that it certified in 2014 and allow Plaintiff Hill to proceed to trial on

3   her individual claims.

4

5   DATED:  April 23, 2020                    K&L GATES LLP

6

7                                            By:  s/ Todd L. Nunn
                                             Patrick M. Madden, WSBA #21356
8                                            Email:  patrick.madden@klgates.com
                                             Todd L. Nunn, WSBA #23267
9                                            Email:  todd.nunn@klgates.com
                                             925 Fourth Avenue, Suite 2900
10                                           Seattle, Washington  98104-1158
                                             Telephone:  (206) 623-7580
11                                            Facsimile:  (206) 623-7022

12                                           *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DECERTIFY ABC CLASS - 24
NO.: 2:12-CV-00717-JCC