THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIFFANY HILL, individually and on behalf of others similarly situated,<br><br>                          Plaintiff,<br><br>        v.<br><br>XEROX BUSINESS SERVICES, LLC, a Delaware Limited Liability Company, LIVEBRIDGE, INC., an Oregon Corporation, AFFILIATED COMPUTER SERVICES, INC., a Delaware Corporation, and AFFILIATED COMPUTER SERVICES, LLC, a Delaware Limited Liability Company,<br><br>                          Defendants. | CASE NO. C12-0717-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion to decertify the class (Dkt. No. 189) and Defendants' motion to compel arbitration and to partially decertify the class (Dkt. No. 169). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Defendants' motion to decertify the class (Dkt. No. 189) and GRANTS in part and DENIES in part Defendants' motion to compel arbitration and to partially decertify class (Dkt. No. 169) for the reasons explained herein.

**I. BACKGROUND**

The Court has previously summarized the factual background of this case and will only

1   repeat those facts relevant to the motions. (*See* Dkt. No. 116 at 1–3.) Defendants operate call

2   centers at which agents respond to calls for third-party clients such as phone companies, airlines,

3   and hotels. (Dkt. Nos. 56 at 5, 39 at 9–10.) Defendants use a compensation system known as

4   Achievement Based Compensation ("ABC"), which Plaintiff alleges violates Washington's

5   Minimum Wage Act ("MWA"). (*See* Dkt. No. 23 at 7, 10.) One aspect of this system is ABC

6   Pay. (Dkt. No. 56 at 7–8.) To receive this type of compensation, agents track all time spent on

7   certain activities, such as receiving calls or performing follow-up work. (*Id.*) Some of these

8   activities—such as receiving inbound calls—are paid on a per-minute basis; each minute is

9   referred to as a "production minute." (Dkt. Nos. 54-7 at 13, 56 at 8, 57 at 32–34.)

10   Agents also record their time for "non-productive" activities, which can include activities

11   like waiting for a call or documenting a completed call. (*See, e.g.,* Dkt. No. 57 at 33–34.) These

12   non-productive activities are not compensated on a per-minute basis. (*Id.*) Instead, under the

13   ABC Pay system, Defendants use workweek averaging to calculate whether an employee's

14   hourly rate fell below Washington's minimum wage. (Dkt. No. 39 at 16.) If that hourly rate is

15   less than the minimum wage, agents receive subsidy pay. (Dkt. No. 56 at 8.)

16   On July 10, 2014, the Court denied Defendants' motion for partial summary judgment

17   and granted in part Plaintiff's motion for class certification. (Dkt. No. 116 at 13.) Defendants

18   filed a motion for reconsideration, asking the Court to reconsider both its denial of Defendants'

19   motion for partial summary judgment and its certification of the ABC class. (*See generally* Dkt.

20   No. 117.) The Court denied Defendants' motion for reconsideration but amended its order to

21   certify an immediate interlocutory appeal of the Court's denial of Defendants' motion for partial

22   summary judgment. (*Id.* at 3.) Defendants subsequently appealed and the Court stayed this case

23   pending the resolution of the appeal. (*See* Dkt. Nos. 128, 131.)

24   The Ninth Circuit certified the question of whether a plan with a production minute

25   metric qualifies as a piecework plan to the Washington Supreme Court. *See Hill v. Xerox*

26   *Business Servs.*, 868 F.3d 758, 763 (9th Cir. 2017). The Washington Supreme Court answered

that such a plan is not a piecework plan. *Hill v. Xerox Business Servs.*, 426 P.3d 703, 708–10 (Wash. 2018). On July 3, 2019, the Ninth Circuit affirmed this Court's order denying Defendants' motion for partial summary judgment. (*See* Dkt. Nos. 139,140).

After the Ninth Circuit issued its mandate, the Court lifted the stay in this case and defined the scope of the ABC class. (Dkt. No. 157 at 4.) The Court found that a class settlement agreement from a similar lawsuit (the "*Sump* settlement") barred class claims that accrued prior to June 4, 2010. (*Id.*) The Court defined the ABC class as follows:

> All persons who have worked at Defendants' Washington call centers under an "Activity Based Compensation" or "ABC" plan that paid "per minute" rates for certain work activities between June 5, 2010, and the date of final disposition of this action.

(*Id.*) In addition, the Court excluded from the ABC class any employees who were hired after September 27, 2012, and who signed arbitration agreements as part of Defendants' revised 2012 Dispute Resolution Program ("DRP"). (*Id.*)

Defendants now move to decertify the ABC class. (Dkt. No. 189.) Defendants also move to compel class members who signed arbitration agreements subject to a 2002 DRP to arbitrate their claims individually and partially decertify the class as to those members. (Dkt. No. 169.)

## II.    DISCUSSION

### A.    Motion to Decertify ABC Class

A district court is empowered to decertify a class when it finds that a class no longer meets the requirements of Federal Rule of Civil Procedure Rule 23. Fed. R. Civ. P. 23(c)(1)(C); *see Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982) ("[B]efore entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative."). For example, subsequent developments in litigation may warrant a court's decision to revisit its decision to certify a class. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir.

ORDER
C12-0717-JCC
PAGE - 3

2010). A court has broad discretion to determine whether decertification is appropriate. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 946 (9th Cir. 2011).

A plaintiff seeking to maintain class certification bears the burden of demonstrating that the Rule 23 requirements are satisfied. *Id.* at 947. Under Rule 23, a plaintiff must affirmatively satisfy the requirements of Rule 23(a) and the requirements of at least one of the categories under Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Rule 23(a) includes the requirements of numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). In addition, Rule 23(b)(3) requires that the common questions of law and fact predominate over those questions affecting individual members and that a class action be a superior method for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). To satisfy Rule 23(b)(3), a plaintiff must show both (1) that the existence of individual injury arising from the defendant's alleged actions is "capable of proof at trial through evidence . . . common to the class rather than individual to its members" and (2) that "the damages resulting from that injury [are] measurable 'on a class-wide basis' through the use of a 'common methodology.'" *Comcast v. Behrend*, 569 U.S. 27, 30 (2013) (quoting *Behrend v. Comcast Corp.*, 264 F.R.D. 150, 154 (E.D. Pa. 2010)); *see* Fed. R. Civ. P. 23(b)(3).

The Court previously found that Plaintiff satisfied the requirements of Rule 23 as to the ABC class. (*See* Dkt. No. 116 at 10.) Defendants now move to decertify the ABC class on the ground that Plaintiff cannot prove liability and damages on a class-wide basis and that trial would turn into unmanageable individualized inquiries. (*See* Dkt. No. 189 at 14.)[1]

As a threshold matter, Defendants dispute whether any aspect of the ABC Pay plan constitutes a violation of the MWA. (*See id.* at 14–20.) While Plaintiff argues that all non-productive minutes were unpaid and therefore constitute an injury under the MWA, Defendants

---

[1] Defendants also initially suggested that the class should be decertified because Plaintiff has failed to present a viable trial plan. (*See* Dkt. No. 189 at 14.) But the Ninth Circuit has noted that "[n]othing in the Advisory Committee Notes [to Rule 23] suggests grafting a requirement for a trial plan onto the rule." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005).

1    argue that any calculation of minimum wage compliance should employ either workweek or

2    hourly averaging and must factor in other forms of compensation, not only ABC pay and subsidy

3    pay. (*See* Dkt. Nos. 195 at 6–7; Dkt. No. 189 at 14–15.)[2]

4         Specifically, Defendants argue that Plaintiff failed to calculate the pay rate for each

5    individual hour, and therefore Plaintiff cannot prove MWA violations or damages on an hourly

6    basis. (*Id.* at 16–19.) Defendants point out that production minutes were interspersed with non-

7    productive minutes and accrued over the course of a day. (*Id.* at 19.) Defendants argue that

8    therefore Plaintiff must calculate MWA compliance for each individual hour that each class

9    member worked throughout the entire class period. (*Id.*) In contrast, Plaintiff contends that that

10   because the ABC Pay system did not directly pay for non-productive minutes, all these minutes

11   should be considered together. (Dkt. No. 195 at 7.) But Defendants' argument how to determine

12   whether the ABC Pay plan complies with the MWA goes to the merits of the case, not the

13   requirements for maintaining class certification under Rule 23. Moreover, the MWA liability

14   issue can be determined on a class-wide basis and thus does not indicate that the ABC Class no

15   longer satisfies the requirements for certification under Rule 23. *See Comcast v.*, 569 U.S. at 30.

16        Defendants also argue that Plaintiff cannot prove liability or damages on a class-wide

17   basis. (*See* Dkt. No. 189 at 20–29.) Defendants assert that proving liability would require

18   individual determinations because class members were often paid under more than one

19   compensation system in any given week, including ABC production minutes, weekly subsidy

20   pay under ABC, fixed hourly rates outside of ABC Pay, piece rate measures (such as calls and

21   documents), and other types of incentive pay and adjustments. (*See id.* at 17.) But Plaintiff's

22   expert states that he can precisely calculate underpaid time for the class by analyzing

23   Defendants' payroll records to identify the unpaid, non-productive minutes, then accounting for

24   ABC subsidy pay. (Dkt. No. 174-3 at 11–13.) Thus, Plaintiff has demonstrated that the class's

25

26   [2] As Plaintiff points out, this is Defendants' sixth plea for workweek averaging. (*See* Dkt. No.
     191 at 16.)

1    alleged injuries and damages are capable of proof at trial through evidence common to the class.

2    *See Comcast*, 569 U.S. at 30. Therefore, Defendants' motion to decertify the ABC class (Dkt.

3    No. 189) is DENIED.

4    **B.      Motion to Compel Individual Arbitration and Partially Decertify Class**

5          Defendants also move to partially decertify the class and to compel individual arbitration

6    for 2,927 class members who signed arbitration agreements subject to a 2002 DRP. (Dkt. No.

7    169.)

8          1.    <u>Legal Standard</u>

9          Section 2 of the Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid,

10    irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

11    revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to compel arbitration if (1) a

12    valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement.

13    *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

14          "Waiver of arbitration is not readily found," *Lake Commc'ns Inc. v. ICC Corp.*, 738 F.2d

15    1473, 1477 (9th Cir. 1984), *overruled on other grounds*, *Mitsubishi Motors Corp. v. Soler

16    Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), and "[a]ny examination of whether the right to

17    compel arbitration has been waived must be conducted in light of the strong federal policy

18    favoring enforcement of arbitration agreements," *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d

19    691, 694 (9th Cir. 1986). "A party seeking to prove waiver of a right to arbitrate must

20    demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with

21    that existing right; and (3) prejudice to the party opposing arbitration resulting from such

22    inconsistent acts." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). The party arguing that

23    waiver of arbitration has occurred "bears a heavy burden of proof." *Id.*

24          2.    <u>Knowledge of Existing Right to Arbitration</u>

25          Defendants do not suggest they were unaware of the 2002 DRP. They instead contend

26    that they could not assert a right to arbitration based on the 2002 DRP because Plaintiff was not a

party to that agreement. (*See* Dkt. No. 169 at 16–17.) But Defendants' own conduct undermines their argument. Even though Plaintiff was also not a party to the 2012 DRP, Defendants promptly asserted their right to arbitration pursuant to the 2012 DRP in their amended answer, (*see* Dkt. No. 27 at 7), and in their opposition to class certification, (*see* Dkt. No. 56 at 21). Plaintiff conceded that any agents who signed the 2012 DRP were excluded from the class, (Dkt. No. 76 at 14 n.11), and the Court accordingly excluded these agents from the class, (Dkt. No. 156 at 4). Therefore, Defendants likewise could have asserted their right to arbitration under the 2002 at the early stages of litigation in this case.

In addition, Defendants cite to several district court cases for the proposition that courts should never find waiver prior to class certification and notice if a defendant may be unable to compel arbitration by absent class members. (*See* Dkt. No. 169 at 17) (citing *Brown v. DIRECTV, LLC*, 2019 WL 6604879, slip op. at 5 (C.D. Cal. 2019); *Mora v. Harley-Davidson Credit Corp.*, 2012 WL 1189769, slip op. at 15 (E.D. Cal. 2012); *Khadera v. ABM Industr. Inc.*, 2011 WL 7064235, slip op. at 4 (W.D. Wash. 2011); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 1753784, slip op. at 4 (N.D. Cal. 2011)). But other district courts have reached the opposite conclusion. *See, e.g.*, *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 307 (C.D. Cal. 2012). And in *Khadera*, Judge Martinez found the defendant had waived the right to arbitration and stated that "[t]he appropriate time for asserting an arbitration agreement is at the beginning of a lawsuit, not after the parties have engaged in extensive litigation, including class-wide discovery and related motion practice." *Khadera*, Case No. C08-0417-RSM, Dkt. No. 397 at 9 (W.D.Wash. 2011).

The Ninth Circuit has not addressed the issue, and at least three other circuit courts have reached conclusion that a failure to raise the right to arbitrate prior to or during class certification may result in waiver. *See Healy v. Cox Commc'ns., Inc.*, 790 F.3d 1112, 1116–20 (10th Cir. 2015); *Lomas v. Travelers Prop. Cas. Corp.*, 376 F.3d 23, 27–28 (1st Cir. 2004); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926–27 (3d Cir. 1992). Therefore, the first element of

1    waiver, Defendants' knowledge of an existing right to arbitration under the 2002 DRP, is

2    satisfied.

3                    3.    <u>Acts Inconsistent with a Right to Arbitration</u>

4            Although there is no "concrete test" for inconsistent acts, a party's active litigation paired

5    with "extended silence and delay in moving for arbitration" is generally inconsistent with a right

6    to arbitration. *Martin*, 829 F.3d at 1125. On the other hand, engaging in limited, non-merits

7    discovery for a few months and moving to stay a lawsuit is "not so inconsistent with a right to

8    arbitrate that [the party seeking arbitration] can be held to have waived any such right." *Heyrich*

9    *v. Global Callcenter Solutions, Inc.,* Case No. C12-1982-JCC, Dkt. No. 79 at 4 (W.D. Wash.

10   2013). The Ninth Circuit has found that a defendant's acts are not inconsistent with a right to

11   arbitration even where a defendant seeks arbitration more than a year after a complaint was filed

12   but before it had answered the complaint. *See Lake Commc'ns, Inc. v. ICC Corp.*, 738 F.2d 1473,

13   1477 (9th Cir. 1984). And where it would have been futile to file a motion to compel arbitration

14   under then-existing law, engaging in even more extended litigation is "not inconsistent with a

15   known right to compel arbitration." *Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935,

16   942 (9th Cir. 2019).

17                    a.   *Defendants' Actions*

18           Plaintiff filed this suit on April 24, 2012. (Dkt. No. 1.) Defendants actively litigated the

19   case for the next 30 months before the appeal. (*See* Dkt. No. 131.) During that time, Defendants

20   opposed a motion for class certification, arguing in part that certain class members were barred

21   from recovery pursuant to the 2012 DRP. (Dkt. No. 56 at 21.)[3] But Defendants did not raise the

22   ───────────────────────

23          [3] In opposition to Plaintiff's motion to certify, Defendants repeatedly asked the Court to
     consider how the 2012 DRP would affect class certification. (*See* Dkt. No. 56 at 21, 25, 32.)
     Defendants argued that Plaintiff did not satisfy the typicality requirement because "she does not

24   face defenses that other agents face." (*Id.* at 21.) Defendants then enumerated these defenses:

25          For example, some agents work for XCS; others were party to a class settlement of
            nearly identical claims in which the judge entered a final judgment in September
            2010 dismissing CPA and wage claims and enjoining any further pursuit of them

26          . . .; others signed individual settlements; and agents hired after September 27,
            2012, are subject to binding individual arbitration . . . and are barred from

2002 DRP as a defense. (*See id.*) Defendants engaged in in extensive discovery about the class members who signed the 2002 DRP. (*See* Dkt. No. 181-1 at 6–8, 11, 13-15.) And in opposition to class certification, Defendants submitted declarations of 15 class members who Defendants now say are bound by the 2002 DRP. (*Compare* Dkt No. 57 at 2–4, *with* Dkt. No. 172-1.) Defendants also brought a motion on the merits of the case, requesting partial summary judgment on the issue of whether ABC Pay complies with the MWA. (*See* Dkt. No. 59 at 9.) The Court stayed the case on November 17, 2014, to permit the interlocutory appeal, and Defendants pursued that appeal for nearly five years. (*See* Dkt. Nos. 131, 138–140.)

After the stay was lifted on July 16, 2019, Defendants repeatedly asserted in correspondence with Plaintiff that the 2002 DRP barred certain class members' claims. (*See* Dkt. Nos. 141 at 1, 187 at 11–13.) Defendants also argued that Plaintiff had "opened the door" to the issue of arbitration in the parties' joint status report. (*See* Dkt. No. 146 at 7.) But Defendants did not make a formal motion related to this potential defense. Instead, Defendants stipulated to approval of a proposed class notice and notice plan and to additional measures for identifying class members. (*See* Dkt. Nos. 161, 165.) Plaintiff duly sent notice to the class members, including the 2,927 members whom Defendants now argue must participate in individual arbitration. (*See* Dkt. No. 167 at 3.) Nearly eight months after the Court lifted the stay, Defendants moved to compel arbitration based on the 2002 DRP. (Dkt. No. 169.) Defendants filed their motion less than three weeks before the close of discovery and less than two months before the dispositive motion deadlines. (*See* Dkt. Nos. 160, 169.) On this record, the Court finds that Defendants' behavior has been inconsistent with a right to compel arbitration. *See Martin*, 829 F.3d at 1125.

b.   *Futility*

Defendants argue it would have been futile to move to compel individual arbitration until

_____

participating in any class action.

(*Id.*)

after *Lamps Plus Inc. v. Varela,* 139 S. Ct. 1407, 1415 (2019) changed the legal landscape because prior to that decision, Defendants could have been forced into class arbitration. (Dkt. No. 169 at 19–20.) As this Court explained in 2011, "class arbitration cannot be imposed upon a party when the underlying contract is 'silent' on the issue." *LaneMcCants et al.* v. *ista North America, Inc.*, Case No. C10-1161-JCC, Dkt. No. 35 at 4 (W.D. Wash. 2011) (citing *Stolt Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 666, 687 (2010)). In 2019, the Supreme Court clarified that class arbitration likewise cannot be imposed when the underlying contract is ambiguous on the issue. *See Lamps Plus,* 139 S. Ct. at 1415. Defendants argue that the 2002 DRP was "silent," not ambiguous, on the issue of class actions, so it is not clear that the *Lamps Plus* decision did alter the legal landscape for this case. (*See* Dkt. No. 169 at 10, 13, 14, 20.) And to the extent that the *Lamps Plus* litigation introduced uncertainty in this circuit about the rule in *Stolt,* that apparently did not emerge until late 2016, well after this case was stayed. *See Varela v. Lamps Plus, Inc.,* 2016 WL 9211655, slip op. at 1 (C.D. Cal. Dec. 27, 2016) (denying request to stay class arbitration); *Varela v. Lamps Plus, Inc.*, 701 F. App'x 670, 673 (9th Cir. 2017) (finding class-wide arbitration was proper where agreement was ambiguous); (Dkt. No. 131).

Defendants' other legal authority is procedurally distinguishable and does not demonstrate that Defendants would have been compelled to engage in class-wide arbitration. *See Murray v. Transportation Media, Inc.*, 2019 WL 7144115, slip op. at 5, *magistrate recommendation adopted*, 2019 WL 7134413 (D.Or. 2019) (finding move to compel arbitration in 2019, while the Ninth Circuit's *Lamps Plus* decision still was in effect and after the Supreme Court had granted certiorari to review that decision); *Hesse v. Sprint Spectrum, L.P.,* Case No. C06-0592-JLR, Dkt. No. 301 at 16 (W.D. Wash. 2014) (finding that an arbitrator's decision to require class arbitration where the arbitration agreement was silent but ambiguous was "not in manifest disregard of the law."). Thus, Defendants have not established that it would have been futile to assert their right to individual arbitration under the 2002 DRP. Therefore, the Court finds the second prong of waiver is met. *See Martin*, 829 F.3d at 1125.

1

4.   Prejudice to Plaintiff

2   A plaintiff can show prejudice where a defendant has engaged in acts that are inconsistent

3   with its right to arbitrate and the plaintiff has incurred costs due to such inconsistent acts. *See*

4   *Newirth*, 931 F.3d at 944. In order to establish prejudice, a plaintiff must show that (1) as a result

5   of the defendants having delayed seeking arbitration, the plaintiff has incurred costs that they

6   would not otherwise have incurred; (2) they would be forced to relitigate an issue on the merits

7   on which they have already prevailed in court; or (3) that the defendants have received an

8   advantage from litigating in federal court that they would not have received in arbitration.

9   *Martin*, 829 F.3d at 1126–27.

10   As discussed above, Defendants engaged in motions practice on the merits of the case

11   and extensive discovery about the class members who signed the 2002 DRP. *See supra* Section

12   II.B.3. Even after the stay of this case was lifted in July 2019, Defendants did not bring a motion

13   to compel individual arbitration, waiting nearly eight more months. (*See* Dkt. No. 169.) And in

14   the interim, Defendants stipulated to a class notice plan that included the 2,927 class members

15   who had signed the 2002 DRP. (*See* Dkt. No. 161.)  Thus, Plaintiff has incurred costs she

16   otherwise would not have occurred because through discovery and motions practice on behalf of

17   a substantial number of class members that Defendants now say must be excluded; therefore,

18   Plaintiff has established prejudice. *See Martin*, 829 F.3d at 1126–27.

19   Accordingly, Plaintiff has satisfied her "heavy burden of proof" to demonstrate the three

20   elements of waiver, *see id.* at 1124, and Defendants may not compel class members to individual

21   arbitration pursuant to the 2002 DRP.

22

5.   Arbitration for the *Amedee* Plaintiffs

23   While this case was pending, 22 call center agents filed a separate lawsuit asserting

24   individual wage claims against Defendants in *Amedee v. Xerox Business Services, LLC, et al.*,

25   Case No. C15-0880-JCC (W.D. Wash.). (*See* Dkt. No. 171 at 1–2.) On July 20, 2015, the parties

26   in that case filed a stipulated motion to stay or dismiss their claims under the FAA. (*Id.* at 2.) The

1   *Amedee* matter was reassigned from this Court to Judge Rothstein and, on August 13, 2015,

2   Judge Rothstein entered a minute order dismissing the *Amedee* matter pursuant to the parties'

3   stipulation that they had agreed to arbitration. *Amedee*, Case No. C15-0880-BJR, Dkt. No. 14

4   (W.D. Wash. 2015).

5         Defendants state that 10 of the *Amedee* plaintiffs subject to the stipulation are included in

6   the ABC class. (*See* Dkt. No. 171 at 2–3.) Defendants request that these agents be excluded from

7   the definition of the ABC class. (*Id.*) Plaintiff does not oppose this request. Therefore, the Court

8   GRANTS Defendants' request to partially decertify the class (Dkt. No. 169) as to the *Amedee*

9   plaintiffs.

10  **III.   CONCLUSION**

11        For the foregoing reasons, Defendants' motion to decertify the class (Dkt. No. 189) is

12  DENIED. Defendants' motion to compel arbitration and to partially decertify the class (Dkt. No.

13  169) is GRANTED in part and DENIED in part as follows:

14        1.   Defendants' request to compel arbitration and to partially decertify the class based

15             on the 2002 DRP is DENIED;

16        2.   The class is partially decertified to remove the *Amedee* plaintiffs, and the class

17             definition is AMENDED as follows:

18                 All persons who have worked at Defendants' Washington call centers
19                 under an "Activity Based Compensation" or "ABC" plan that paid
                   "per minute" rates for certain work activities between June 5, 2010,
20                 and the date of final disposition of this action, but excluding any
                   employees (1) who were hired after September 27, 2012 and who
21                 signed arbitration agreements as part of Defendants' revised 2012
                   Dispute Resolution Program; and/or (2) who previously stipulated to
22                 arbitration in *Amedee v. Xerox Business Services, et al.*, Case No.
                   2:15-cv-8800-BJR.

23        //

24        //

25        //

26        //

ORDER
C12-0717-JCC
PAGE - 12

DATED this 28th day of August 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE