THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIFFANY HILL, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XEROX BUSINESS SERVICES, LLC, *et al.*,<br><br>Defendants. | CASE NO. C12-0717-JCC<br><br>ORDER |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 173, 183). Having thoroughly considered the briefing and relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part each motion for the reasons explained herein.

I.   BACKGROUND

The Court has outlined this longstanding case's details in a previous order, (*see* Dkt. No. 116), but will briefly summarize them here. Defendants operate call centers which respond to inquiries from third-party clients. (Dkt. No. 23 at 7.) This includes phone companies, airlines, and hotels. (*Id.*) During the relevant period, Defendants compensated their call center agents using a scheme termed the Achievement Based Compensation ("ABC") plan. (*Id.*) The plan details are, as the Ninth Circuit put it, "mind-numbingly complex." *Douglas v. Xerox Bus. Servs.,*

*LLC*, 875 F.3d 884, 885 (9th Cir. 2017). But the gist is as as follows: Under the ABC plan, agents receive different rates of pay depending on the task performed. (*See* Dkt. No. 116 at 2) (prior order describing the plan). "Productive" tasks—such as receiving inbound calls—are compensated at a variable per-minute rate. (Dkt. Nos. 62 at 3, 95-1 at 7–9.)[1] The rate trends higher or lower, depending on customer satisfaction and efficiency. (*Id.*) Each minute of a call is termed a "production minute." (Dkt. Nos. 47-1 at 101–02, 95-2 at 37.) "Non-productive" tasks—such as waiting for calls—are not independently compensated. (Dkt. No. 47-1 at 28.) Instead, at the end of each workweek, Defendants total each agent's compensation for productive tasks. (Dkt. No. 62 at 4.) They then calculate what would otherwise be the agent's hourly pay rate for that week by dividing their total compensation for productive tasks by the total number of hours worked—including on non-productive activities. (*Id.* at 4–5.) If the resulting hourly rate was less than the minimum permissible wage, Defendants provide "subsidy pay" to ensure that the effective hourly rate meets the minimum wage, at least on a weekly basis. (*Id.* at 5.)[2]

In 2012, Plaintiff Tiffany Hill brought this action on behalf of a class of similarly situated employees, alleging Defendants' payment plan violates the Washington Minimum Wage Act ("MWA"). (*See generally* Dkt. No. 1.) Two years later, the Court denied Defendants' motion for partial summary judgment and granted Plaintiff's motion for class certification. (Dkt. No. 116 at 13.) The Ninth Circuit affirmed this decision on interlocutory appeal, (*see* Dkt. No. 139), and the parties cross-moved for summary judgment on all remaining claims. (Dkt. Nos. 173, 183.) But due another interocutory appeal of this Court's ruling on a separate motion (Dkt. No. 202), the case was stayed again. (Dkt. No. 211.) That stay has since been lifted, making the summary judgment cross-motions ripe for this Court's review.

---

[1] The per-minute rate for class members during the class period ranged from $0.15 and $0.25 per minute. (Dkt. No. 62 at 4.)

[2] Agents also receive "additional pay" for certain tasks—such as training and meetings. (Dkt. No. 47-1 at 52.) These activities are compensated at a standard hourly rate, and are not at issue in this case. (*See id.*)

## II. DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts in the light most favorable to the nonmoving party and draw justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On cross-motions for summary judgment, the Court evaluates each motion independently giving the nonmovant in each instance the benefit of all reasonable inferences. *Lenz. v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016).

### B. Res Judicata

Defendants move to dismiss 967 class members, each of whom affirmatively opted into class participation in *Douglas v. Xerox Bus. Servs.*, Case No. C12-1798-JCC (W.D. Wash. 2012), the parallel Federal Labor Standards Act ("FLSA") case. (Dkt. No. 183 at 16–21, 185-1 at 91–113.) *Douglas* concluded in a judgment for Defendants. *See Douglas v. Xerox Bus. Servs., LLC*, 2015 WL 10791972 (W.D. Wash. 2015), *aff'd*, 875 F.3d 884 (9th Cir. 2017). Accordingly, Defendants argue those class members' claims are barred by *res judicata*. (*Id.*) In response, Plaintiff does not contest the substance of this argument; rather, she suggests that Defendants

1 waived this defense by acquiescence. (Dkt. No. 191 at 10–13.)[3]

2 Under the doctrine of *res judicata*, otherwise known as claim preclusion, a final judgment on the merits bars further claims by a party on the same cause of action, as well as all claims that *could have* been asserted in a prior suit. *See Clark v. Bear Sterns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). But *res judicata* "is an affirmative defense which may be deemed waived if not raised in the pleadings." *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328–29 (9th Cir. 1995). Moreover, "the failure of the defendant to object to the prosecution of dual proceedings while both proceedings are pending also constitutes waiver." *Id.*

Here, Plaintiff asserts "Defendants acquiesced in the prosecution of Washington MWA claims and federal FLSA claims through two separate federal lawsuits." (Dkt. No. 191 at 11.) This, according to Plaintiff, is because Defendants "never objected to the filing of the second lawsuit under the FLSA in *Douglas*," and "never asked Plaintiffs to consolidate the cases . . . ." (*Id.*) But Defendants did, in fact, raise *res judicata* as a defense in their answer to the *Douglas* complaint. *See* Case No. C12-1798-JCC, Dkt. No. 23 at 6. And although they do not appear to have meaningfully litigated the issue at that stage, they did raise it more explictly in response to the *Douglas* plaintiffs' motion to certify the collective action. *See id.*, Dkt. No. 111 at 25.[4]

---

[3] Plaintiff also argues that "[r]es judicata does not apply to a first-filed action." (*Id.* at 9–10.) In other words, she asserts that because this lawsuit was before *Douglas*, *res judicata* cannot bar the instant lawsuit. (*See id.*) But as Defendants correctly note, "it is the date of the judgment, not of the lawsuit, that controls a *res judicata* defense." (Dkt. No. 193 at 6) (citing *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985)). Accordingly, the Court rejects Plaintiff's "first-filed action" argument.

[4] At least one dissenting circuit judge has concluded that a defendant's "cloudy answer" did not suffice "to put [plaintiffs] on fair notice that [the defendant] objected to the [] maintenance of separate state and federal actions." *Davis v. Sun Oil Co.*, 148 F.3d 606, 614 (6th Cir. 1998) (Boggs, Circuit Judge, dissenting). They noted "the boiler-plate nature of [the defendant's] answer" before stating that "what matters is not whether the magic words 'affirmative defense' appear[] in pleadings, but whether the Court and the parties were aware of the issues involved." *Id.* This Court shares in the judge's skepticism. Indeed, Defendants here made little effort to object to the dual proceedings in their answer in *Douglas*, beyond a brief mention of "*res judicata*" in a laundry list of boilerplate affirmative defenses. *See Douglas*, Dkt. No. 23 at 6.

Specifically, Defendants objected to any *Hill* class member joining the *Douglas* action, arguing "[i]t [was] improper for those agents to be seeking duplicative relief in two proceedings arising from the same facts." *Id.* For those reasons, the Court FINDS that Defendants did not waive their *res judicata* defense.[5]

Accordingly, the Court GRANTS Defendants summary judgment on their *res judicata* argument and DISMISSES those 967 class members who opted-in to *Douglas*.

### C. Categorization of the ABC Plan

Defendants dispute the ABC plan's proper categorization for purposes of measuring MWA compliance. Specifically, they ask the Court to find it is an alternative, non-hourly incentive compensation plan (rather than a piecework or hourly plan). (Dkt. No. 183 at 22–25.)

Defendants' argument evinces an obtuse failure to accept multiple rulings on this issue. Indeed, this Court previously determined that class members were hourly employees, and it finds no basis to alter that conclusion. (Dkt. No. 116 at 4–5) ("[T]he Court concludes that the Federal Way employees are hourly workers, because 'production minutes' are simply calculations of time.").[6] The Ninth Circuit affirmed the ruling after first certifying "the dispositive question of state law" to the Washington Supreme Court. *Hill v. Xerox Bus. Servs., LLC*, 868 F.3d 758, 760

---

Nonetheless, Defendants did raise the issue again in response to the *Douglas* plaintiffs' motion to certify the collective action—this time more explicitly. Thus, in opposing Defendants' effort to exclude the *Hill* class members from the *Douglas* action, Plaintiff was on notice that a judgment in *Douglas* may preclude certain individuals from obtaining relief in *Hill*.

[5] The Court is sympathetic to Plaintiff's concerns that "[a]llowing the defendants to assert claim preclusion at this late stage would work a substantial injustice on the plaintiffs." *See Clements*, 69 F.3d at 329. Indeed, this case has spanned over a decade and was litigated alongside *Douglas* for nearly six years. Nonetheless, the Court is bound by precedent limiting the waiver exception to cases where the defendant *actually* failed to raise res judicata in the pleadings. And here, Defendants did not so fail.

[6] When Defendants moved for reconsideration of this ruling, they advanced a similar argument: "[B]ecause the agents also receive other non-hourly pay, the [Court] incorrectly resolve[d] the issue of how minimum wage compliance is determined." (Dkt. No. 117 at 3.) Again, the Court rejected this argument "largely because of the conclusion that a system based on precise calculations of time should be viewed as an hourly system . . . ." (Dkt. No. 126 at 3.)

(9th Cir. 2017) (certifying question); 426 P.3d 703, 705 (Wash. 2018) (answering certified question); 771 F. App'x 771, 772 (9th Cir. 2019) (affirming and remanding). In doing so, the Ninth Circuit explicitly rejected Defendants' argument that the ABC plan could be classified as anything other than piece rate or hourly pay. *Hill*, 868 F.3d at 760 n.1 ("Xerox cannot seriously contend that its compensation plan was anything other than one of these two systems.").

In sum, because the ABC plan's categorization raises purely legal issues, which have been considered by multiple courts, including this one, the Court GRANTS summary judgment to Plaintiff on the categorization of the ABC plan.

### D.    Method for Calculating MWA Compliance

Having confirmed that the MWA's "per-hour" standard applies, the Court next considers whether summary judgment is warranted on Defendants' liability and damages. The parties offer competing expert damages reports, each purporting to apply the proper methodology for calculating MWA compliance. (*Compare* Dkt. No. 174-3, *with* Dkt. No. 184-1.) Fundamentally, though, the difference in the experts' methods is rooted in two legal questions: (1) whether Defendants' compliance must be measured on an hour-by-hour basis (as Defendants assert) or through minute aggregation (as Plaintiff asserts); and (2) whether excess subsidy pay or other non-subsidy pay may be subtracted from the overall damages owed.

#### 1.   Hour-by-Hour vs. Aggregation

Defendants contend that, with respect to the first issue, "the relevant question is whether earnings attributable to each hour satisfy the minimum rate." (Dkt. No. 183 at 26.) In other words, they argue the proper way to determine MWA compliance is by examining *individual* 60-minutes block against the applicable minimum wage for that block. (*See id.*) Plaintiff, on the other hand, asserts that compliance should be measured by aggregating the total *time* (*i.e.*, minutes) per day or week worked. (Dkt. No. 191 at 21–24.)

On this issue, at least, Plaintiff has the better argument. Washington has a "long and proud history of being a pioneer in the protection of employee rights." *Hill*, 426 P.3d at 708

(quotations and citations omitted). Indeed, it was among the first states to enact statewide minimum wage laws "to protect the health, safety, and general welfare of its citizenry." *Id.* And in keeping with that tradition, the Washington Supreme Court "*requires* . . . that the MWA be liberally construed [in favor of the employee] and that its exceptions be narrowly confined." *Id.* at 709 (emphasis added and citations omitted).

The MWA provides that "every employer shall pay [their] employees . . . wages at a rate of not less than [the applicable minimum wage] per hour." RCW 49.46.020(1)–(2). The critical issue here is how "per hour" is defined. According to the Department of Labor and Industries ("DLI"), "'[h]ours worked' includes all time worked *regardless of whether it is a full hour or less*." DLI Admin. Policy ES.C.2 at 2 (emphasis added); *see also* DLI Admin. Policy ES.D.1 at 5 ("Employees must be paid for all time worked," and "[e]mployers may pay for *all minutes* on the time card") (emphasis added).[7] In other words, under the MWA, hourly workers need not work a full hour for that time to independently count (and thus be compensable).

This is consistent with the weight of authority. In *Stevens v. Brink's Home Security, Inc.*, for example, the Washington Supreme Court held that a contract denying employees compensation for time spent driving company vehicles between their homes and jobsites was unenforceable. *See* 169 P.3d 473, 476–77 (Wash. 2007). In doing so, the Court explained that "the MWA gives an employee the right to compensation for *all time worked*." *Hill*, 426 P.3d at 709 (citing *Stevens*, 169 P.3d at 476–77) (emphasis added). Similarly in *Alvarez*, the Ninth Circuit affirmed the district court's conclusion that the defendants "infringed plaintiffs' right to be paid for all hours worked" under the MWA, as well as the court's award of damages for the "*aggregate* compensable period [of] time" spent conducting certain activities. 339 F.3d at 901 (emphasis added). Importantly, both cases involved periods of unpaid time which amounted to

---

[7] "Under Washington law, deference is owed the state agency interpretation of a state statute that the agency enforces, 'if the law being interpreted is within[that] agency's expertise.'" *Alvarez v. IBP, Inc.*, 339 F.3d 894, 911 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) (citations omitted).

ORDER
C12-0717-JCC
PAGE - 7

less than an hour (and in some instances, mere minutes). Neither court required the rigid "hour-by-hour" analysis Defendants urge this Court to impose.[8]

Ultimately, as Plaintiff notes, Defendants' approach "would subject workers to the very same abuse the Washington Supreme Court was concerned about with workweek averaging." (Dkt. No. 191 at 26.) Defendants are essentially asking the Court "to allow them to use 'an employee's high producing [minutes] . . . to offset their low producing [minutes] in a given sixty-minute period. (*Id.*) (quoting *Hill*, 426 P.3d at 706). "[S]uch an approach would wreak havoc by tying compliance to the whims of employers and obligating courts to parse through complicated payment schemes." *Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 889 (9th Cir. 2017). And it "is inconsistent with [this Court's] duty to liberally construe the provisions of the MWA, including its corresponding regulations, in favor of workers' protections and the right to be paid a minimum wage for each hour worked." *Hill*, 426 P.3d at 709.

There is simply no legal support for Defendants' hour-by-hour approach. Accordingly, the Court GRANTS summary judgment to Plaintiffs on this issue.[9]

### 2. Excess Subsidy Pay & Non-Subsidy Pay

"Any employer who pays any employee less than the amounts to which such employee is entitled . . . shall be liable to [the employee] for the full amount due to [the employee], less *any*

---

[8] Defendants argue *Stevens* and *Alvarez* are distinguishable "off-the-clock" cases, in which the issue is whether workers were paid for all time worked. (Dkt. No. 193 at 9.) They contend that the instant matter, by contrast, is an "on-the-clock" case, where the issue is whether recorded hours were paid at the minimum wage rate. (*Id.*) Defendants' sole supporting citation is *Sampson v. Knight Transportation, Inc.*, 448 P.3d 9 (Wash. 2019), a case involving piecerate workers where the Washington Supreme Court interpreted and applied WAC 296-126-021. (*See* Dkt. No. 193 at 9.) But that provision, by its terms, applies *only* to commission or piecework employees. *See id.* Whereas, this case involves hourly workers. Absent legal authority dictating otherwise, the Court is unpersuaded by Defendants' "off-the-clock" versus "on-the-clock" distinction.

[9] Defendants argue that Plaintiff's insistence on labeling class members as "hourly workers" should preclude them from now calculating damages on a week-by-week basis. (Dkt. No. 193 at 15.) But Defendants conflate two concepts: workweek *averaging* and workweek *aggregation*. The former is a method of payment reserved for non-hourly workers. The latter is a method of calculating damages for purposes of MWA liability.

ORDER
C12-0717-JCC
PAGE - 8

*amount actually paid . . . .*" RCW 49.46.090(1) (emphasis added). Unsurprisingly, the parties disagree about what constitutes "any amount actually paid"—specifically, whether it includes excess subsidy pay and/or other non-subsidy payments (*i.e.*, incentive pay, commissions, bonuses, etc.). (*Compare* Dkt. No. 183 at 11, 35, *with* Dkt. No. 191 at 31–32.) According to Plaintiff, an employer who fails to pay for time worked cannot offset the wages owed for that time with other pay received by the employee for other time worked; nor can the employer use compensation paid to the employee in one week to offset compensation owed in another week. (Dkt. No. 191 at 31–32.) Whereas, according to Defendants, an employer is entitled to subtract *all* amounts paid from the total wages otherwise owed —regardless of the type of pay and its timing. (Dkt. No. 193 at 11.)

Admittedly, the statute is not a model of clarity on these issues. But the Washington Supreme Court has held that, at least in other contexts, "commissions . . . and bonuses . . . are included" when measuring MWA compliance. *Inniss v. Tandy Corp.*, 7 P.3d 807, 815 (Wash. 2000).[10] And a comparison of the MWA with the FLSA[11] supports Defendants' view. The FLSA explicitly provides that sums excluded from the regular rate "shall not be creditable toward wages required [under the minimum wage section] or overtime compensation . . ." 29 U.S.C. § 207(h); *see Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 913–14 (9th Cir. 2004). The MWA, in contrast, contains no such provision. *See* RCW § 49.46 *et seq*. Thus, Plaintiff's reliance on *Ballaris*, a case involving interpretation of § 207(h) of the FLSA, is unpersuasive "because the MWA and FLSA provisions . . . clearly differ in their plain language." *Carranza*, 416 P.3d at 1212.

---

[10] Although *Inniss* interpreted a different MWA provision, *see Carranza v. Dovex Fruit Co.*, 416 P.3d 1205, 1212 (Wash. 2018), its rationale applies with equal force here. *Innis* involved interpretation of the term "regular rate," while this case involves an even broader term, "any amount actually paid."

[11] It is well established that the MWA is based on the FLSA. *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 298 (Wash. 2012).

For those reasons, the Court finds that excess subsidy payments, along with other, non-subsidy payments, may be included in calculating Defendants' MWA compliance and damages. The Court therefore GRANTS summary judgment to Defendants on this issue.

### 3. Motions to Strike

In arguing for summary judgment, the parties each move to strike portions of the other's expert reports. (Dkt. Nos. 183 at 35–36, 191 at 35–36.) Since neither party's expert applied the proper methodology for measuring MWA compliance,[12] both motions are GRANTED. The Court will provide each party an opportunity to prepare revised expert reports, consistent with the guidance described above. *See infra* Part III.

### E. Double Damages

Finally, Plaintiff seeks summary judgment on whether the class is entitled to double damages due to Defendants' "willful withholding" of wages under Washington law. (Dkt. No. 173 at 11–12.) RCW 49.52.050 and .070 provide that "employers who intentionally underpay employees must pay exemplary double damages." *Hill v. Garda CL Northwest, Inc.*, 424 P.3d 207, 210 (Wash. 2018). "But an employer defeats a showing of willful deprivation of wages if it shows there was a 'bona fide' dispute about whether all or part of the wages were really due." *Id.* at 211. This defense has an objective and a subjective component. *Id.* The objective component, which is a question of law, requires that the dispute be "objectively reasonable—that is, the issue must be 'fairly debatable.'" *Id.* The subjective component, which is a question of fact, requires that the employer have a "genuine belief in the dispute at the time of the wage violation." *Id.*

Defendants prevail on both fronts. With respect to the objective component, the parties argue over the appropriate time to evaluate whether the dispute was objectively reasonable. But regardless, this case, up until this point, involves ongoing and fairly debatable issues regarding

---

[12] *See supra* Part II.D.1., 2., for the Court's view on the proper methodology, which it finds to apply here as a matter of law. Meaning, the experts must follow this methodology for their respective opinions to be presented to a jury.

the proper amount of damages owed. And the Washington Supreme Court's 2018 decision resolved *some* issues, not *all* of them. As for the subjective component, Defendants provide evidence that their ABC plans were "designed to assure compliance with minimum wage requirements" and to address "the unfairness of paying the same amount for a call regardless of whether it lasted one minute or thirty minutes." (Dkt. Nos. 62 at 2–5, 63 at 6, 116 at 4.) Plaintiffs provide no evidence in rebuttal. (*See generally*, Dkt. No. 191 at 37–41.) Thus, because no genuine dispute exists as to whether a bona fide dispute existed, the Court GRANTS summary judgment to Defendants on this issue. Specifically, it concludes that the class is not entitled to double damages.

### III.  CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment (Dkt. Nos. 173, 183) are GRANTED in part and DENIED in part. Further, the parties are INSTRUCTED to meet-and-confer and provide the Court with a joint status report within 30 days of this order. The report should include a proposed schedule for the completion and exchange of revised expert reports,[13] along with a proposed trial date and proposed deadlines for pre-trial motions and related pre-trial submissions. The parties are further DIRECTED to contact the Court's Courtroom Deputy, Kadya Peter, at Kadya_Peter@wawd.uscourts.gov or (206) 370-8525 to confirm the Court's calendar availability prior to proposing a trial date.

DATED this 13th day of February 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[13] The Court would be willing to extend the dispositive motion deadline, limited to motions dealing with legal issues relating to the revised expert reports and overtime payment. Any such request should include a proposed briefing schedule for such motions.